## MILLER and Another *v.* STOWMAN.

MILL-DAM.—Where the owner of a mill has not obtained the right by grant, prescription or license to flow water upon the lands of another, such flowing is an illegal act, and the continuance of the wrong for a period of fifteen years, without complaint, does not create a right. Page 149.

SAME.—WRIT OF ASSESSMENT OF DAMAGES.—The statute providing for the writ of assessment of damages denies the privilege of the writ where the effect of granting the application would be to flow water back upon, or divert it from, any mill or mill works already erected, or in process of erection. Page 152.

APPEAL from the *Miami* Circuit Court.

ELLIOTT, J.—This was a proceeding under the statute by "writ of assessment of damages," commenced in the spring of 1865, by *Levi Miller* and *Isaac Miller*, the appellants, against *Charles Stowman*, the appellee, and others.

The complaint alleged, *inter alia*, that the plaintiffs were the owners of certain lands, which are particularly described, situated on both banks of *Eel* river, on which were situated a valuable grist and flouring mill, also a saw mill, of great public utility, the machinery of which was propelled by water from *Eel* river, by means of a dam across said stream, immediately above said mills, of the height of four feet and six inches, erected in 1844; that the appellee, *Stowman*, was the owner of certain lands on said stream,

above and adjoining the plaintiffs', which are also properly described by metes and bounds; that said dam, when maintained at the height of four feet and six inches, causes the water to flow back in said stream on a part of the lands of *Stowman*, &c., and praying that the damages sustained by *Stowman* may be assessed by a jury, under the provisions of the statute.

A proper writ was issued and a jury impanneled, who returned a finding assessing damages in favor of *Stowman*. The finding of the jury, so far as it relates to the questions presented for our decision, is, in substance, as follows: That the raising and maintaining of the plaintiffs' dam to the height of four feet and six inches will flow the water back in said river, at the ordinary medium stage of water therein, up to a point on the lands of *Stowman* twenty rods above where the section line between sections 29 and 30 crosses the same, being about twenty rods up the river, above the mouth of a stream called *Spring-brook*; that said *Stowman* was the owner of a mill and mill-dam on his own lands, situated on *Eel* river, above the dam of the plaintiffs, and that he also owned a mill seat on said river, below his then present mill, and about twenty-seven rods below the dam thereof; that he had made certain excavations upon said mill seat, preparatory to using the same and the water power thereon, and had provided certain materials for a new mill, but that he subsequently quit said work and sold a part of said materials; that said mill seat would be materially injured by the water flowed back in the river thereon, by the dam of the plaintiffs being raised and maintained at the height of four feet and six inches. The jury thereupon assessed *Stowman's* damages by reason thereof, and to the excavation made for said new mill, and to his spring-branch, at $1,400, and by the loss of timber and other materials furnished for the new mill $100. The jury further found that the old mill of *Stowman's* would not be in anywise affected or injured by the dam of the plaintiff being raised and maintained four feet and six inches high.

In the Circuit Court, the sheriff having made the proper return of the inquest with his proceedings, *Stowman* appeared and filed an answer of four paragraphs. A demurrer was sustained to the first paragraph, and the second was subsequently withdrawn. No question arises upon either of them in this court. The third alleges that he, *Stowman*, now is, and for fifteen years immediately preceding the commencement of this suit has been, the owner in fee simple, and in the possession, of the tracts of land alleged in the petition to be his; that he is the owner of a grist or flouring mill on said land, on the north side of said river, which is propelled by water taken therefrom, by means of a dam across the same, abutting his lands on each side; that said dam was erected in the year 1836, and has been maintained and kept up from that time to the present, by him and those through whom he derives title; that said mill has, during all that time, been one of great public utility, accommodating a large and thickly populated region of country that cannot so well be served by any other mill, and for a long time was the only mill within a circuit of many miles; that during the last fifteen years he has owned said mill and the water privileges of said stream upon his said land, which consisted of about five and one-half feet of fall, and furnished at all times water sufficient to run a mill with four pairs of burrs, with all the necessary gearing and machinery, &c.; that his present mill does not use all of said power, or fall, upon said land, by about two feet; that he, said defendant, purchased said premises with the view and purpose of erecting a new mill upon the same, about two hundred yards below his present mill, and of using the water for propelling it from the present dam, by means of a race extending therefrom to the new mill, running all the way through his own land, and thereby, with the necessary fall for a tail race, using all the fall or power on his land; that with the view of erecting said new mill, he did, during the latter part of the year 1860 and early part of 1861, prepare and gather together upon said premises

a large amount of materials for the construction of a new mill house, and the machinery of a new mill, with four run or pairs of stones; that he commenced digging out the foundation for said mill, and while at work at it, and before its completion, to-wit: in the month of *August*, 1861, the plaintiffs raised their said dam, below that of the defendant, and on the same stream, so as to cause the water to flow back upon the premises of the defendant and fill said excavation, whereby the defendant was compelled to abandon said work; that immediately thereafter, to-wit: on the 12th day of *September*, 1861, he brought suit in the Circuit Court against the plaintiffs for damages, for backing water on his said mill site and premises by means of said dam, and praying that they be compelled to lower the same, &c.; that these plaintiffs, defendants in that suit, made defense, and claimed the right so to flow back the water upon this defendant's premises, and such proceedings were had in said cause that, upon the final hearing thereof, at the *March* term, 1864, the court found that the plaintiffs did, by means of their said dam, flow the water back and upon the premises of this defendant; that they had no right so to do, and assessed damages in favor of this defendant up to the commencement of that suit, but made no decision in relation to lowering said dam, which judgment and decision remain in full force; that said plaintiffs have ever since kept up their said dam to such a height as to flow the water back upon said premises of the defendant, and into the foundation of his new mill, so that he could not, without great inconvenience and expense, erect his said new mill; that immediately after the decision of that case, and before the defendant had time to prepare for the completion of said mill, to-wit: on the 17th day of *June*, 1864, the plaintiffs instituted this suit for the assessment of damages; that should the plaintiffs be permitted to sustain the same as prayed for, it will certainly destroy the defendant's new mill works, and the additional power that he was improving and intending to use at that point.

The fourth paragraph is substantially the same as the third, omitting the allegations in reference to the recovery of damages in the suit by the defendant against the plaintiffs for overflowing the pit, &c., for his new mill, and averring that the new mill when erected will be of great public utility, and will accommodate a large neighborhood that cannot be so well accommodated at any other mill, and that it is his purpose to complete said mill as soon as it can be done after this suit is terminated. The court overruled a demurrer to these paragraphs, to which ruling the plaintiffs excepted.

The plaintiffs then replied in four paragraphs. The first was a general denial, but was subsequently withdrawn. The second paragraph admits *Stowman's* title, but alleges that he purchased his lands, mill, &c., long after the erection of the plaintiffs' dam and mill works, and with full knowledge thereof, and of the extent to which said dam backed the water up said stream, and on the lands so purchased by *Stowman;* that the particular tract of land on which *Stowman* contemplates building a new mill was purchased by him long after he purchased the old mill property, and long after the plaintiff's dam was erected, and the water in said stream flowed back, &c.; that no foundation for a mill can be had at the place where *Stowman* commenced excavating therefor, for the reason that the bank of *Eel* river at that point is composed of gravel and quick-sand; that the purpose of the defendant, in the purchase of the tract of land last purchased by him, and in the excavation made and materials furnished, was not to improve his mill privilege and accommodate the public, but to harass the plaintiffs and destroy their valuable mill works, &c.

The third paragraph sets up that when *Stowman* purchased his land and water privileges, they were improved by a dam and flouring mill situated thereon, erected in 1836; that said dam and mill occupy the only places therefor on *Stowman's* land; that where the mill now stands, *Stowman* has sufficient power, with his present dam, only two feet high, to grind

all the grain growing in the country for five miles around him, and for all purposes and uses he can have for water power at that point, &c.

. The fourth paragraph alleges that before *Stowman* purchased his mill and mill privileges, the plaintiffs' dam had been erected, and had ever since been maintained at a height of four feet and six inches, and the water in said stream flowed back upon the site of the new mill, all of which *Stowman* well knew when he purchased, and that he purchased said new site and commenced the excavation, not for the purpose or with the intention of erecting .a new mill, but to vex, harass and injure the plaintiffs.

The court sustained a demurrer to each paragraph of the reply, and the plaintiffs declining to reply further, rendered final judgment against the plaintiffs, dismissing said writ as to *Stowman,* to all of which the plaintiffs excepted.

The questions presented to this court arise upon the rulings of the court in overruling the demurrers to the third and fourth paragraphs of *Stowman's* answer, and in sustaining the demurrers to the second, third and fourth paragraphs of the reply.

It is not very seriously urged by the appellants that the replications constitute valid replies to the answers, if the latter are sufficient to bar the writ for the assessment of damages, but it is insisted that neither paragraph of the answer presents a valid bar. The facts more especially relied upon by the appellee to bar the plaintiff's right to the writ, are fully stated in the third paragraph of the answer. Under the facts of the case as thus presented, the appellants do not claim that they have the right to flow the water on *Stowman's* land without his consent, and without compensation; but they claim "the right as against his new mill project, to maintain their dam at its present height of four feet and six inches, and to flow back the water on *Stowman's* land, by condemning it, and paying the damages."

Do the facts presented by the record sustain the claim of

the appellants? The decision of this question will dispose of the case.

The appellants claim that the finding of the jury and the pleadings subsequent thereto, show that their dam was erected, by those under whom they held, more than fifteen years prior to the commencement of the suit against them by *Stowman*, referred to in the third paragraph of the answer, and ever since its erection has been maintained at a height of about four feet and six inches; that *Stowman* purchased his mill, and the land on which the site of his contemplated new mill is situated, near fifteen years before the commencement of this suit, with full knowledge of the existence of the dam of the appellants; and that it flowed the water back in the river above said mill site; that since *Stowman* purchased his mill and lands, the appellants, and those under whom they hold title, had made large and valuable improvements on their mill, during all which time *Stowman* silently acquiesced and made no complaint in consequence of the water in said river being flowed back on his land and above his new mill site. It is insisted that these facts estop *Stowman* from denying the right of the appellants to maintain their dam at the height of four feet and six inches, by paying the damages sustained by him thereby.

The authorities referred to in support of this position, are either cases of the acquiescence in boundary lines between adjoining proprietors, or those in which the owner of property stands by and sees it sold as the property of another person, without giving notice of his title. They do not sustain the position assumed in this case.

The appellants do not claim the right to flow back the water on *Stowman's* land, by grant, prescription, or even by the license of *Stowman*, or those from whom he purchased. The act of flowing back the water was an illegal act, a wrong, and the continuance of that wrong without complaint for the period named did not create a right. That

question was settled by the recovery of *Stowman* in the suit referred to in the third paragraph of the answer.

Another position assumed by the appellants' counsel is, that prior occupancy, in such a case, gives priority in equity, and that as the appellants' dam was built and the water flowed back upon *Stowman's* land before he commenced to build his new mill, for the purpose of using the water at that point, the appellants have the right to continue their dam and so flow back the water, by paying the damages sustained by *Stowman.* The cases referred to in support of this position are *Seymour* v. *Carter*, 2 Met. (Mass.) R. 520, *Cary* v. *Daniels*, 8 *id.* 466, *Smith* v. *Goulding*, 6 Cush. 154, *French* v. *Owen*, 2 Wis. 250, and *Mason* v. *Hill*, 5 Barn. & Adolph. 1. The *Massachusetts* cases are decided upon a statute of that state, very different from ours. *Smith* v. *Goulding*, *supra*, was a complaint under the statute. The defendant set up a parol agreement of the plaintiff not to claim damages for flowing his land, if the defendant would erect the dam and mill, and in deciding that the defense was a valid one, it was said by SHAW, C. J.: "The right of the respondent to erect his mill, and thereby flow the complainant's land, was not founded on the complainant's permission; it was a right derived from the statute, which, as owner of the lands, the complainant could not prevent or control."

It was held in the *Wisconsin* case referred to, that any permission or license to overflow the lands of another, to be effectual or permanent, must be expressed by deed or conveyance in writing, but that a parol license in such a case is a good defense to an action of trespass until it is countermanded. These are the only points ruled in the case.

The question involved here is ably discussed in *Mason* v. *Hill*, *supra*, by DENMAN, C. J., in which the right claimed by the appellants is expressly denied.

These proceedings are under the statute for the " assessment of damages," and the rights of the appellants must be

determined by its provisions.    It authorizes the property of one citizen to be taken or appropriated by another for his private benefit because it is deemed that the public has an interest in the use to which it is applied.    It is a power conferred by the State in the exercise of the right of "eminent domain," which Chancellor KENT defines to be the inherent sovereign power which gives "to the legislature the control of private property for public uses, and for public uses only."    2 Kent. Com. 339.

The statute declares what may be appropriated, and provides the mode of the appropriation and assessment of damages, and the appellants, in claiming its benefits, must present a case clearly within its provisions.    It is provided by section 700, (2 G. & H., p. 314,) that "In case of an application by any person, after having erected his mill dam, no damages shall be allowed, and the application shall be dismissed, unless the case be such that leave would have been given to build a mill, if the application had been filed before the erection of the mill dam."    This section clearly forbids that the appellants should derive any advantage by having built their dam and flowed back the water before instituting these proceedings.    The case must therefore be considered as though the proceedings had been instituted to determine the right to flow back the water and to assess the damages therefor, before building the dam.

Section 684 authorizes the writ to issue in certain enumerated cases, the third of which is, "To assess the probable amount of damages to the lands, creek or spring of another, or the improvements thereon, by the overflow of water or otherwise, which may be occasioned by any mill dam already erected, or proposed to be erected."    The sixth is, "To determine the height to which any person about to build, or having built, a dam may raise the same at any time, without causing back water to flow upon any other mill works situated above on the same water course."

Section 699 enacts that, "If it shall appear on the inquest, or by other evidence, that any mill curtilage or garden of any

person will be, or has been, overflowed or injured, or the health of the neighborhood annoyed, the court shall not give leave to build the mill dam, but if none of those injuries have accrued, nor will likely accrue, the court may allow the application, if otherwise proper." And section 701 provides that "Water shall not be diverted from the bed of any water course, by the authority of this act, to the injury of any mill or machinery already erected or in the process of erection." This section, in terms, applies only to the diversion of water from a mill or machinery erected, or in the process of erection, but accords in spirit with the sixth clause of section 684, and section 699. The words "mill works" in the former, and "mill curtilage or garden" in the latter, and "mill or machinery already erected or in the process of erection," in section 701, all in effect relate to a common subject, and when properly construed together deny the privilege of the writ, when asked for the purpose of flowing water back upon, or diverting it from, any mill or mill works already erected, or in the process of erection. Here it is shown by the inquest of the jury, as well as by the answer, that *Stowman* had commenced the erection of a new mill before the commencement of these proceedings, and by the answer that he was prevented from completing the same by the water flowed back upon the site thereof by the appellants' dam. These facts are not denied by the replication. *Stowman's* mill works, then, were in the process of construction within the meaning of the statute, when the writ was sued out and the inquest had, and we think the Circuit Court did not err in dismissing the proceedings as to him.

The judgment is affirmed, with costs.

RAY, J., dissented.

*W. Z. Stuart*, for appellants.

*N. O. Ross* and *R. P. Effinger*, for appellee.