Larsh *et al.* *v.* Test *et al.*

---

## LARSH ET AL. *v.* TEST ET AL.

PARTIES.—*Supreme Court.*— *Writ of Assessment of Damages.*—In proceedings on a writ of assessment of damages, where damages are assessed in favor of a part of the defendants, who do not contest or appeal the same, and where separate judgments are rendered, other defendants may appeal without joining those who do not appeal.

WRIT OF ASSESSMENT OF DAMAGES.— *When Denied.*—Sections 684, 699, and 701 of the code, when construed together, deny the privilege of the writ of assessment of damages, when asked for the purpose of flowing water back upon, or diverting it from, any mill or mill works already erected, or in process of erection.

SAME.—The owner of land and of a mill-seat on one side of a river, who has erected and been running a mill thereon, and who proposes to extend his race farther down the stream and erect a new mill, and return the water to the river at a point below the new mill proposed to be erected, cannot by virtue of a writ for the assessment of damages acquire a right to divert the water of the stream to the injury of an owner of land on the other side of the river, who has, previous to the plaintiff's commencing work to extend his race and erect the new mill, commenced the erection of a mill on

Larsh *et al. v.* Test *et al.*

his land and the construction of a race, and who proposes to construct a dam and take water from the river at a point below where the water is returned to the river from the plaintiff's old mill, and above the point where the water would be returned to the stream from the plaintiff's new mill.

From the Wayne Common Pleas.

*J. Perry* and *W. A. Bickle,* for appellants.

*J. P. Siddall, C. H. Burchenal, J. W. Gordon, T. M. Browne,* and *R. N. Lamb,* for appellees.

DOWNEY, C. J.—This was a proceeding by the appellees, William Test, Rufus Test, and Oliver Test, against the appellants, Leroy M. Larsh, Lafayette Larsh, William S. Charles, Ambrose Ruby, and J. Henry Bohmer, commenced January 4th, 1869, under the statute for the assessment of damages, 2 G. & H. 310.

It is stated in the complaint, among other things, that the plaintiffs are the owners of certain real estate constituting a mill-seat and water-power, on and along the east fork of White Water river, in the county of Wayne, a description and plat of which are filed with the complaint; that they and the persons under whom they claim have, for many years, established and operated on said real estate a woollen mill and machinery therein, the same being propelled by the water of said river, said mill being at a point designated on said plat by the word "factory;" the water being taken from the river at a point designated on said plat by the words "plaintiffs' dam;" and thence conducted by a mill-race to the said factory, from whence, after passing over the water-wheel, it is returned to said river at a point on said plat designated by the words "tail-race;" from whence it has been accustomed to flow down the bed of said river until it passes beyond the lower boundary of said plaintiff's lands; that the fall of said stream from said dam to said factory, as at present located, is about eight feet, and that there is a further fall of said stream from said factory to the lower boundary of their said lands of about four feet; and they desire to change the location of their mill from the point where it now stands to a point on their

said lands further down said stream, so as to get and use the
full benefit of all the fall of said stream on their lands; and to
this end they have commenced the construction of a mill at a

point designated on said plat by the words "new mill;" and
they propose and intend, instead of turning the water into
said river at said tail-race, as at present, to conduct it by a

Larsh *et al.* *v.* Test *et al.*

mill-race located on or near the line marked and designated on said plat by the words "proposed extension" to the said new mill; and from thence to return it into said river by a tail-race to be constructed on or near a line designated on said plat by the words "proposed tail-race;" the said new race and new tail-race being wholly upon the real estate of the plaintiffs, and the said water being returned into said river upon said lands of the plaintiffs about one hundred yards above the lower boundary thereof.

They say that Ambrose Ruby, who resides in Wayne township, in said county, owns certain lands on and upon the east bank of said river below the point where the water is at present returned into the same, and above the point where the proposed new tail-race will enter the same, a description of which land is filed with the complaint, and is marked on said plat as "Ambrose Ruby's land;" that one J. Henry Bohmer, residing in Cincinnati, Ohio, owns certain other lands on and along the east bank of said river, between the present tail-race and the entrance of the proposed new tail-race, a description of which land is filed, and which is designated on said plat as "J. Henry Bohmer's land;" and that Leroy M. Larsh, Lafayette Larsh, and William S. Charles, who reside in Wayne township, in said county, also own certain lands on and along the east bank of said river below the point of entrance of the present tail-race, and above the point of entrance of the proposed new tail-race, a description of which is filed with the complaint, and which is designated on said plat by the words "lands of Larsh, Larsh, and Charles." It is alleged that all of said lands will, to some extent, be affected by the said change in the point at which said water is returned into said stream, in this, that the water required to operate the said mill will thereby be prevented from flowing into and along the bed of said river between the outlet of said present tail-race and the outlet of the contemplated new tail-race, and so much of the water will be diverted from flowing on and by that part of said lands of said defendants abutting on said river, although a large quantity, sufficient for all ordinary pur-

poses, will always continue to flow from said dam along the bed of said river as now and heretofore. They pray the court to cause a writ for the assessment of damages to be issued according to law, and the proper proceedings required by law to be taken, and on the final hearing that the court will order, adjudge, and decree to the plaintiffs the right to conduct and divert the water as described, upon payment of the proper damages found in favor of the parties entitled thereto, and for other proper relief.

Upon presentation of the complaint to the court, it was ordered that the clerk issue a writ according to law, reciting the material parts of the complaint, to the sheriff of the county, directing him to empanel a jury of six disinterested freeholders of said county, not owning lands adjoining the lands upon which damages are to be assessed, or on which the mill of plaintiffs is situated, to meet upon the lands described in the complaint on a day to be fixed by the sheriff, to make assessment, according to law, of the damages to the lands of the defendants, occasioned or to be occasioned by the construction of said race and the diversion of the water of said river, as described and prayed for by the plaintiffs, and that said sheriff do first give notice to the defendants as required by law.

In pursuance of this order, a writ was issued to the sheriff bearing date January 6th, 1869, commanding him to give notice, empanel a jury, and cause the assessment of damages to be made, as directed in the order of the court.

The sheriff made his return, bearing date April 15th, 1869, to the court, at the April term, 1869, which return was accompanied by the inquest, in which the amount of damages assessed in favor of each of the defendants was set down. Neither Ruby nor Bohmer appeared in the proceeding, but Leroy M. Larsh, Lafayette Larsh, and William S. Charles appeared on the return of the writ and inquest, and filed an answer consisting of seven paragraphs:

1. They alleged that the plaintiffs ought not to have leave to divert the water from the river in their complaint mentioned, nor to build said mill or factory, nor to assess any

damages with a view to the building of said mill or factory, or diverting said water from said river.

2. They alleged, that after conversing with and being encouraged by the plaintiffs to build a flouring mill, for several years prior to the 1st day of January, 1868, the said plaintiffs then and there supposing themselves to be the owners of the Bohmer land hereinafter described, and expressly stating to the defendants that they would consent to the building of the dam and digging of the race, as asked for by the defendants, relying on which statements and assertions, the said defendants, on or about the 10th day of January, 1868, formed a partnership consisting of the three, made contracts with carpenters, sawed the lumber, prepared the timber and stone to commence the building of the flouring mill, fully and accurately designated on the plat filed and made part hereof; and on the 10th day of February, 1868, the defendants commenced the building of said mill and excavating the tail-race; and on the 8th day of August, 1868, they had said mill-house raised and fully enclosed, and their tail-race dug; and that they had diligently proceeded with the work on said mill, and had actually laid out and expended, before the filing of the plaintiffs' application, the sum of six thousand dollars in the building of said mill and the construction of said tail-race, with the full knowledge of and without objection from said plaintiffs, or either of them; that on the 23d day of April, 1868, the defendants purchased of Henry Bohmer and his wife, at the sum of two hundred and twenty-five dollars, four acres and thirty-four hundredths of land, which is particularly described in the answer, for the purpose of building a dam in and diverting the water from the river to their said mill, as the same is represented on said plat; that on the 15th day of April, 1868, the defendants caused an accurate survey of the land and the route to their said mill to be made, and subsequently, on the 1st day of May, 1868, they caused another and more accurate survey to be made, as shown by said plat, and commenced the work on said dam and race leading from said dam to said mill, with

the full knowledge and consent of said plaintiffs, and on the 14th day of December, 1868, filed their application in this court for leave to build a dam in said river, divert the water from the same to run the said mill, and to assess such damages as the plaintiffs and others, through whose lands their said mill-race runs to said mill, would sustain by reason thereof; which application is still pending in said court wholly undetermined, and which, with all proceedings thereon, these defendants make a part of this ANSWER; and the defendants expressly aver that they commenced in good faith, with the knowledge of the plaintiffs and with their consent, the erection and construction of their said flouring mill, and with the full knowledge on the part of the plaintiffs that the water to run said mill was to be taken out of said river at the point marked on said plat, and that they have proceeded in and toward the completion of said mill and appurtenances as soon as *practicable;* and they charge that they commenced their said mill and head-race, at the point marked "defendants' dam" on said plat, before the plaintiffs had commenced their said mill or factory, and before the said plaintiffs had filed their application to assess the damages of the defendants, and for leave to divert the water from the defendants' lands and mill; and should the plaintiffs finally have leave by this court to divert said water and build the said factory, the defendants aver that they will sustain damages to the amount of seven thousand dollars, which they demand to be assessed, subject to the ultimate determination of the court on the question of the plaintiffs' right to build said factory.

The third paragraph adopts the same paragraph, as far as to the italicised word "practicable," and alleges, in addition, that the plaintiffs purchased the lands on which they design to place their new factory, on the 11th day of May, 1868, long after the defendants had commenced the building of their said flouring mill, and with full knowledge that the same was in process of construction, and that the defendants intended to divert the water from said river at the point designated on said plat, marked "defendants' dam," for the pur-

Larsh *et al.* *v.* Test *et al.*

pose of running the said mill when the same should be finished.

The fourth paragraph, after adopting the second to the same extent as the third does, alleges, in addition, that the defendants purchased their land, made the survey and plat, commenced the building of their said mill and diverting said water from said point marked "defendants' dam" on said plat, through the said bayou to said mill of said defendants, by the leave and license and consent of the plaintiffs; and they aver that they have laid out and expended in the erection and construction of said mill and race the sum of seven thousand dollars, no part of which has been tendered or offered by plaintiffs to them.

The fifth paragraph, adopting the second paragraph to the same point, alleges further, that the defendants commenced the building of their said mill under a license from the plaintiffs to build a dam in said river at the point designated on said plat, and to conduct the water from said river to said mill, on the payment of such damages as the plaintiffs might sustain by the diversion of said water, to be ascertained by arbitrators or assessors under the provisions of the statute in such case made and provided; and they aver that they have always been ready, willing, and anxious, and they are still willing and anxious, to have the damages assessed, and to pay the same to the plaintiffs, but they now refuse to accept the same.

The sixth paragraph, adopting the second as far as the said italicised word, then alleges that the defendants commenced the building of said mill, and appropriated the building of said dam and the diversion of the water, with the full knowledge of the plaintiffs, and before the plaintiffs had made any commencement of their factory, or of anything connected with the same; and the defendants aver that they have laid out and expended a large sum, to wit, seven thousand dollars, in building said mill and the appurtenances to the same, and if they are deprived of the right of building said dam, diverting said

water, and using the same, their said mill will be of no use or value whatever ; wherefore, etc.

The seventh paragraph, after adopting the second paragraph down to the word "answer" in small capitals, alleges, in addition, that the plaintiffs, with a full knowledge that the defendants intended to build a flouring mill and to run the same by the construction of a dam at the point designated on the plat aforesaid, and that the defendants intended to divert the water from said river through said bayou to their said mill, stood by and saw the defendants form their partnership, engage their workmen, and provide the materials, commence the building of said mill, and proceed with said work until the defendants had expended a large sum, to wit, two thousand dollars, and then, on the 30th day of April, 1868, for the first time, said to the defendants that they might want to use the water in the river to run a factory, which they thought of building below the defendants' intended dam.

The plaintiffs replied to the second, third, fourth, fifth, sixth, and seventh paragraphs of the answer by a general denial thereof.

A trial by the court resulted in a finding for the plaintiffs, in which the damages of the appellants were assessed at thirty dollars, and those of Ruby and Bohmer at six dollars each.

The appellants moved the court for a new trial, on the ground that the finding of the court was contrary to law and the evidence. This motion was overruled by the court, and the defendants excepted and put the evidence in the record. Judgment was rendered in favor of the plaintiffs, conferring upon them the rights asked by them in their complaint.

The only error assigned is the refusal of the court to grant a new trial.

No question is made by either party as to the pleadings. Hence the position assumed by the learned counsel for the appellees, that the paragraphs of the answer subsequent to the second are bad, because they refer to and adopt part of the allegations of the second paragraph, however correct in cases

Larsh *et al.* *v.* Test *et al.*

where the question is properly presented, cannot be sustained here.

Counsel for appellees submit that the appeal ought to be dismissed, on the ground that it is taken by part only of the judgment defendants.

Ruby and Bohmer were defendants to the proceeding, and damages were assessed in their favor by the jury empanelled by the sheriff, and again by the court on the trial of the cause. Hence, it is insisted they should have joined as appellants under sec. 551, p. 270, 2 G. & H. We think, however, that the judgments rendered in the common pleas were so separate and distinct that the appellants ought to be allowed to appeal without joining Ruby and Bohmer with them. Indeed, we do not see why there should have been any new assessment of damages by the court as to Ruby and Bohmer. They did not appear in court. No issues were made by them. The assessment made by the jury as to them was uncontroverted. The court had nothing to do as to them but to render judgment for the amounts assessed in their favor, if desired by them. 2 G. & H. 314, sec. 698.

We proceed to dispose of the question presented by the assignment of errors. The motion for a new trial, the overruling thereof, and the assignment of that ruling as error, present the question whether the evidence was sufficient to justify or sustain the finding of the court.

First, it ought to be ascertained what facts were necessary to be proved. It may be conceded that the case was made out by the evidence for the plaintiffs, and that the finding was properly made in their favor, unless it appears from the evidence that the paragraphs of the answer, or some one or more of them, were proved.

It is provided in section 701, 2 G. & H. 314, that " water shall not be diverted from the bed of any watercourse, by the authority of this act, to the injury of any mill or machinery already erected, or in the process of erection."

In *Miller* v. *Stowman*, 26 Ind. 143, this court said: " This section, in terms, applies only to the diversion of water

from a mill or machinery erected, or in the process of erection, but accords in spirit with the sixth clause of section 684, and 699. The words 'mill works' in the former, and 'mill curtilage or garden' in the latter, and 'mill or machinery already erected or in the process of erection,' in sec. 701, all in effect relate to a common subject, and when properly construed together deny the privilege of the writ, when asked for the purpose of flowing water back upon, or diverting it from, any mill or mill works already erected, or in the process of erection. Here it is shown by the inquest of the jury, as well as by the answer, that Stowman had commenced the erection of a new mill before the commencement of these proceedings, and by the answer, that he was prevented from completing the same by the water flowed back upon the site thereof by the appellants' dam. These facts are not denied by the replication. Stowman's mill works, then, were in the process of construction, within the meaning of the statute, when the writ was sued out and the inquest had, and we think the circuit court did not err in dismissing the proceedings as to him."

This being the law, it remains to inquire whether the evidence shows that the mill of the appellants was already erected, or was in process of erection, when the appellees commenced to divert the water from the watercourse. We do not regard it as a material circumstance in the case, that the appellees had been for a number of years using the water from the stream to propel their factory. It does not, at all events, give them any right other than such as they had for that time used and enjoyed. This was to take the water from the stream at their dam, conduct it by means of their original race to the factory, and after using it to propel their machinery to return it to the bed of the stream at their original tail-race, which was immediately at the factory. It may be remarked, also, in this place, that we not think the question whether the dam which the appellants propose to construct will or will not flow the water back upon the wheel of the factory is involved in the issues. The evidence in the bill of exceptions tends to show that it would not so flow the water back as to interfere

with the works at the factory. If it shall appear that the dam which the appellants propose to erect will cause the water to flow back, to the injury of the factory of the appellees, it would probably be the duty of the court, in their proceeding to acquire the right, to refuse them leave to build the dam. Sec. 699, 2 G. & H. 314.

Neither do we regard it as a question in this case whether the appellants might or might not construct a dam at a point lower down on the stream, and thus conduct the water to their mill. If they had, by commencing the erection of their mill and the construction of their dam, races, etc., acquired a right which is protected by the statute, they are not bound to yield it up for another without some legal reason for so doing.

The evidence tends to show that the erection of a dam at the lower point spoken of in the evidence would be much more expensive than the erection of the dam at the point fixed upon by the appellants.

The evidence shows that the appellants commenced making their contracts with reference to the erection of their mill, in February, 1868; that timber was hewn and lumber sawed during that month and in March; that work on the tail-race was commenced in April or May, which was completed by the middle of June, and the excavation for the foundation made ready for the stone work; that they commenced getting stone ready about the middle of March; that the foundation was completed and the frame of the mill erected by the 1st of August, and that within two months after that time the mill was enclosed and the carpenter's work completed; that they purchased from Bohmer the tract of land at the point where they propose to locate their dam, on the 23d day of April; that prior to this date they had caused surveys to be made: the place of the dam to be designated, and the route of the head and tail-races; and afterward, in April or May, they had another survey made; that in September considerable work was done on the head-race at different places, and that by the 1st of September they had expended about five thousand dollars.

The evidence shows that the appellees, or some of them, knew of the surveys and intention of the appellants to erect their mill, and that they knew that the work, to this extent, had been done before they commenced this proceeding, and money to this amount expended.

Whether the evidence shows that they assented to the building of the mill or not, we need not decide. Nor, perhaps, is it necessary that they should have known that the appellants had their mill in process of erection.

The defendants gave no evidence of any steps or proceedings taken by them under the statute to secure the privilege of erecting a dam, race, mill, etc.

The evidence shows, that in December, 1868, the appellees staked out the location for their new mill; that during that month or the month of November, they made some contracts looking to the erection of their new mill, but little or no work was done before they commenced this proceeding, which was on the 28th of November, as stated by some of the witnesses, but which, as shown by the caption to the transcript, was the 4th of January, 1869. It is very clear to us, from the evidence, that the mill of the appellants was in process of erection before this proceeding was commenced, and before anything was done toward the erection of the new mill of the appellees.

In the case of *Miller* v. *Stowman, supra,* Stowman had purchased a piece of ground below his former mill with the view of erecting a new mill upon the same; he had prepared and gathered together upon the premises a large amount of materials for the construction of the new mill house and the machinery of the new mill, with four runs or pairs of stones, and had commenced digging out the foundation. It was held, that these acts were such as to satisfy the statute, by showing that his mill was in process of erection. If these acts brought Stowman within the statute, surely the acts done by the appellants bring them within the statute, and entitle them to its protection.

There is evidence on the part of the appellees to the effect

that they purchased the land on which they now propose to erect the new mill, with the understanding that they would have a place to erect such mill when they got ready to do so, and that they had spoken to the appellants, or some of them, of their intention at some time to erect a new mill.

But we cannot regard the mere purchase of land suitable for a mill-seat, and the expression of an intention at some time to erect a mill, as bringing the case within the statute. It cannot be said in such a case, that there is a "mill or machinery already erected, or in the process of erection." The mere ownership of the land could not prevent the appellants from acquiring a right under the statute by first commencing the erection of their mill, although the appellees had expressed an intention at some future time to erect a mill.

It is insisted by counsel for the appellees, that the mere fact of the erection of a mill, or the commencement of the work of erection, by a party who has not secured to himself by grant, lease, or prescription, or by the proper legal proceedings, the right to erect a mill-dam or a race, and to divert the water, can give to the party no right whatever, as against another party who has commenced and is prosecuting the proper legal proceedings for the appropriation of the same, or any part of the same water rights; in other words, that in the consideration of proceedings pending by different parties for the condemnation and appropriation of water rights under the statute, priority of commencement of proceedings gives priority of right, regardless of the time or order of the actual commencement of the work of making the respective improvements.

Counsel refer us to Angell Watercourses, secs. 135, 352, 493; *Hendricks* v. *Johnson,* 6 Port. 472; *Snow* v. *Parsons,* 28 Vt. 459; *Heath* v. *Williams,* 25 Me. 209; and *Bailey* v. *Rust,* 15 Me. 440. After an examination of these authorities, we should concede the correctness of this position, were it not for the section of the statute which we have quoted. The language of that section is very general. Water shall not be diverted from the bed of any watercourse, by the authority

of this act, to the injury of any mill or machinery already erected, or in the process of erection.

To refer again to the case of *Miller* v. *Stowman, supra.* There, Stowman had commenced no proceedings under the statute to obtain the right to erect his new mill. Miller had commenced such proceedings, and in that proceeding it was adjudged that because Stowman had commenced the erection of his new mill, he was protected by the statute. This is not, we think, an unreasonable construction of the statute. The effect of it is to give protection, so far as this proceeding is concerned, to those who have, without first resorting to the statute, erected any mill or machinery, or who have such mill or machinery in process of erection. It leaves them exposed to all the remedies which may be had against them according to the common law, or any statute of the State other than that regulating this proceeding. They have the right by virtue of the statute to resort to this proceeding after the mill is erected, as well as before. If they shall not resort to the statutory proceeding, they are liable to be sued for the damages which they may occasion, as often as the parties injured may have a cause of action against them, until they shall protect themselves by having the damages legally assessed, etc.

In our opinion, the court, upon the evidence should have found for the defendants, for the reason stated.

The judgment is reversed, with costs, and the cause remanded, with instructions to grant a new trial.

Opinion filed November term, 1873; petition for a rehearing overruled November term, 1874.