Test *et al.* v. Larsh *et al.*

No. 6363.

TEST ET AL. *v.* LARSH ET AL.

WRIT OF ASSESSMENT OF DAMAGES.—*Estoppel.*—*Voluntary Acceptance.*— Where a person, desiring to erect in a watercourse a dam, abutting upon the land of another, etc., under the provisions of the act concerning the assessment of damages, 2 R. S. 1876, p. 281, has caused the proper proceedings to be instituted, and has within one year, from the date of judgment, paid to the injured party the amount of damages found due, and the same are voluntarily accepted, the latter is estopped from afterward controverting the rights of the plaintiff as established by the judgment; nor is it material in such case, that the judgment may have been erroneous.

PRACTICE.—*Supreme Court.*—*Reversal.*—*Second Appeal.*—If a cause be appealed to the Supreme Court and the judgment reversed, and the cause remanded to the lower court for a new trial, and a second appeal be taken, it brings up for review and decision nothing but the proceedings subsequent to the reversal; none of the questions which were before the court and decided on the first appeal can be re-heard or re-examined upon a second appeal.

From the Wayne Circuit Court.

*C. H. Test* and *C. H. Burchenal*, for appellants.
*W. A. Bickle*, for appellees.

NEWCOMB, C.—This was a proceeding instituted by the appellants, under article 41 of the code of practice, for the assessment of damages that might be occasioned by the relocation of a woollen mill owned and operated by the appel-

Test *et al. v.* Larsh *et al.*

lants, on the east fork of the Whitewater river, in Wayne county, and the lengthening of an existing tail-race to accommodate the new mill. The cause was commenced in the Wayne Common Pleas in January, 1869. The proper writ was issued, and by its authority the sheriff empanelled a jury, which proceeded to examine the premises, and, after such examination, decided all points involved in the petition in favor of the plaintiffs, and assessed damages to the appellees in the sum of thirty dollars. On the return of the writ and inquest into court, the appellees appeared and filed answers to the petition. A trial was had in the common pleas, which resulted in a confirmation of the finding of the sheriff's jury, with an assessment of thirty dollars damages in favor of the defendants, the present appellees, for which judgment was rendered in their favor. After the expiration of nearly three years, the defendants appealed to this court, and the judgment of the common pleas was reversed. *Larsh* v. *Test*, 48 Ind. 130. The ground of reversal was, that it appeared that, before the filing of the petition of the plaintiffs, the defendants had commenced the erection of a flouring mill below the proposed improvement of the plaintiffs, which would be injured by granting the prayer of the petition. The section of the statute on which the reversal was based reads as follows: "Sec. 701. Water shall not be diverted from the bed of any watercourse, by the authority of this act, to the injury of any mill or machinery already erected, or in the process of erection."

The common pleas court having been abolished, and the business pending therein transferred to the circuit court, a new trial was had in the latter, which resulted in a verdict and judgment in favor of the defendants, the appellees here.

After the cause was remanded, the defendants filed an amended answer, in three paragraphs, the first being the general denial, the second and third setting up affirmative defences. The plaintiffs, after demurring unsuccessfully to

the special paragraphs, filed a reply in three paragraphs, the second and third of which pleaded affirmative matters; and subsequently, by leave of the court, the plaintiffs filed a supplemental reply, in two paragraphs, which will be hereafter noticed. Demurrers were overruled to the first and second paragraphs of the first reply, and sustained to both paragraphs of the supplemental reply.

The pleadings are quite lengthy, but a synopsis of them may be necessary to a proper understanding of the case. The second paragraph of the answer alleged, in substance, that, in January, 1868, the defendants entered into a contract for the construction of a flouring mill, and collected and prepared materials for the construction of the same; that, on the 10th day of February, 1868, they commenced the erection of said mill, in April commenced to excavate the tail-race, and completed the same by June, 1868; that they completed the foundation of the mill by August, 1868, and within two months thereafter had the carpenter work completed; that, in April, 1868, they purchased four acres and thirty-four perches of land, for the purpose of building a dam and diverting water from said stream to said mill, which land lies immediately along and adjoining and embracing said stream, directly east of where plaintiffs proposed to erect their new mill; that, in May, 1868, defendants commenced to build a dam on said tract, and to dig a race to convey water therefrom to said mill, which dam is north of and above the mouth of the tail-race which plaintiffs proposed to construct from their proposed new mill to said stream, and by which they proposed to return the water into the stream at a point south of and below the dam of the defendants; that, before the plaintiffs had done anything toward building their said new mill, or constructing their new races, and before the commencement of the suit, the defendants had nearly completed their mill and dam and race, at a cost of $6,000, with the knowledge and consent

of the plaintiffs, who stood by and saw all the work and improvements made by the defendants; that, from the time of commencing said work, the defendants had proceeded diligently with the same, with a view thereafter to procure a writ for the assessment of damages, all of which the plaintiffs well knew; that the defendants' mill is on their land, a short distance below the mouth of plaintiffs' new tail-race, on the east side of said stream, and defendants' race is constructed along the east side and near said stream, from their dam to their mill, and thence into the stream below; that, if the plaintiffs are permitted to divert the water as prayed for, it will greatly injure the mill of the defendants, and render it worthless as a flouring mill.

The third paragraph alleged, substantially, that, about January 1st, 1868, the defendants were contemplating the erection of a flouring mill on the east side of said stream, near thereto, and not far south of the site of plaintiffs' proposed new mill; and to obtain power to run the same they contemplated constructing a race from such mill north, along the east side of the stream to a point a short distance north of the mouth of plaintiffs' proposed new tail-race, at which point they intended to erect a dam to turn the water into said race, all of which was well known to the plaintiffs, who encouraged them to erect said mill, with the express understanding that, if they did build it, they should build a dam in said stream, at or near said place where they contemplated building their dam, and should divert the water at said point into their contemplated race for the purpose of running said mill; and, relying upon this understanding, and with the consent and approval of the plaintiffs, the defendants proceeded, in good faith, to erect said mill and to dig said contemplated race and to build said dam; and, before the commencement of this suit, and before defendants had any notice that plaintiffs had any objection to the erection of said mill, or the digging of said race, or the making

of said dam and diverting said water, and before the plaintiffs had commenced building their new mill, the defendants had expended $7,000 on said works, all of which was expended with the knowledge of the plaintiffs, and without any objection on their part; that, if plaintiffs are permitted to divert the water as prayed for, the same will greatly injure the defendants' mill, and render it worthless and useless as a flouring mill.

The second paragraph of the reply to these answers alleged that the mill which the defendants commenced to build was situated about one mile below the point to which their proposed dam would back the water of said stream; that between said points and the point where the defendants propose to return the water to said stream, there was a fall of said stream of about fifteen feet, being at least five feet more than was or is necessary for the running of defendants' mill, all of which would be unreasonably and unjustly appropriated by the defendants if they are permitted to maintain their dam at the point proposed by them, to the exclusion of the plaintiffs; that the fall sought to be appropriated by the plaintiffs, in this proceeding, is only about three feet, leaving water power amply sufficient for the defendants' mill, which can be readily appropriated and used by them without interfering with plaintiffs' use of the water as prayed for; that it is in no wise necessary for the running of defendants' mill, that the water should be taken out at the point proposed by them, or at any other point which will interfere or conflict with the use of the water sought by the plaintiffs, and that water power amply sufficient for defendants' mill can readily be obtained by constructing a dam and diverting the water at a point below plaintiffs' proposed tail-race; that, at the time the defendants commenced their mill, and at the commencement of this suit, the plaintiffs owned the lands on the west bank of said stream, opposite to and for a long distance above and below the point where

Test *et al. v.* Larsh *et al.*

the defendants proposed to construct their dam, and were lawfully entitled to the unobstructed flow of the water upon said lands, and that no dam could be constructed at said point without flowing back the water on plaintiffs' lands above, nor without abutting such dam on the lands of the plaintiffs opposite; that, at the time plaintiffs filed their petition, the defendants had not acquired, or commenced any proceedings to acquire, a right to flow back or divert the water at that point; that the plaintiffs never consented to the erection of said mill or dam by the defendants, nor to their proposed diversion of the water at said point, nor at any other point that would conflict with the appropriation and use of the water sought in this proceeding, but, on the contrary, as soon as informed of the intention of the defendants, forbade the same, and notified them that they, the plaintiffs, intended to improve and use the water power as now prayed for.

The third paragraph of the reply stated that, at the time of the commencement of this action, the plaintiffs owned the land on the west bank of the stream, opposite to, and for a long distance above and below the point of, defendants' proposed dam; that no dam could be constructed at such point without abutting the same, at its western end, on plaintiffs' land, nor without flowing the water back on plaintiffs' land above; that the defendants had not then acquired, nor taken any proceedings to acquire, any right to erect such dam or flow back the water, or to divert the water at such point, but, in making such dam, flowing back the water and diverting the same, they were and would be trespassers on the rights of the plaintiffs; that, between the mill so being erected by the defendants and the site of their proposed dam, there were large tracts of land along the eastern bank of said stream, through and across which the water diverted at said point would have to be conducted for one hundred rods by a mill-race, in order to reach and operate said mill, which said lands were, at the commencement of said mill

and at the commencement of said suit, owned by other persons, and that the defendants had not at either of said times acquired, or commenced any proceedings to acquire, any right to enter upon such lands or to construct said race. This paragraph also denies the matters of estoppel alleged in the answers.

The first paragraph of the supplemental reply set out the proceedings in the court of common pleas, the return and filing of the inquest of the sheriff's jury and the finding and judgment of the court on the trial afterwards had. The reply then alleged that, within one year after said judgment, to wit, on the 30th day of April, 1870, said judgment being then in full force, no appeal having been taken therefrom, and no notice of an appeal having been given by the defendants, the plaintiffs paid to the defendants thirty dollars, in lawful money, the damages assessed in their favor by said judgment, which sum was then and there accepted by the defendants as and for their damages, and in full payment and satisfaction thereof ; and after such payment and acceptance of said damages, and within three years after the rendition of said judgment, the plaintiffs proceeded, at great expense, to construct a mill and race, on their own lands, upon the line designated in said petition, and to erect a new mill at the point designated therein, to be operated by the water to be diverted as prayed for in said petition, and to equip the same with expensive machinery, at a cost of $5,000, said works being complete and ready for operation before the expiration of three years from the date of said judgment ; all of which work and expenditure were so done with the full knowledge of the defendants, who all the time stood by and made no objection, nor gave any notice of their intention to appeal from said judgment, or to dispute or question the right of plaintiffs to divert and use the water as prayed for in said petition ; but, on the contrary, the defendants assured the plaintiffs that they did not intend to

take such appeal, they, the defendants, well knowing during all said time that the plaintiffs were doing such work and making such expenditure on the faith of said judgment and of said payment of damages, and also knowing that such work and expenditures would be wholly fruitless unless said mill should be operated by the water to be diverted as aforesaid; that it was not until after said work and expenditures had been fully completed that the defendants took an appeal from said judgment to the Supreme Court, which appeal was not taken until the — day of May, 1872; that, unless the plaintiffs are permitted to divert and use the water of said stream as prayed for, their said mill and the expenditure thereon will be of no use or value. Wherefore they claim that the defendants are estopped and precluded from setting up the matters contained in said answers, and from denying or disputing the validity of said proceedings, or the right of the plaintiffs to divert and use the water as prayed for.

The second paragraph of the supplemental reply is like the first, except it omits the averments of the latter, that the defendants stood by, etc., while the plaintiffs were building their new mill, and the averment, that the defendants assured the plaintiffs that they did not intend to appeal from the judgment of the common pleas.

Did the circuit court err in sustaining the demurrers to the supplemental reply?

The rights and obligations of the plaintiff in a proceeding of this character, when there has been a judgment in his favor, but damages are awarded to the defendant, are defined in the following sections of the statute:

"Sec. 702. The plaintiff shall not be invested with any rights under these proceedings until he pays or tenders the damages assessed, which must be done within one year after the assessment is confirmed, and not afterwards. On payment being made, he shall be seized in fee simple, of the land appropriated for abutting a dam, or for a race, excavation

or embankment. If he fails to complete the mill and dam, or race, excavation, or embankment, within three years after the inquest is confirmed, or to put the same in repair fit for use, within two years after being destroyed or injured, such land shall revert to its original owner, his heirs or assigns. If, at the time of destruction or injury, the owner is under legal disabilities, he may repair the premises within two years after the disability is removed.

"Sec. 703. Any assessment of damages confirmed by the court, and paid within a year after confirmation, shall bar a recovery for the same in any other action."

The first clause of sec. 702 has the effect to vest in the plaintiff, on payment by him and the voluntary receipt by the defendant of the damages assessed, all the rights conferred upon him by the judgment rendered in the cause. Under the second clause, the payment and acceptance of the damages would vest a fee simple in land taken from the defendant, if any were taken. Sec. 703 was intended to give the judgment, in such case, the same force and effect as a judgment in ordinary matters of controversy between litigating parties.

A payment into the clerk's office, or a tender of the damages assessed, would not conclude a defendant ; for, unless he accepted the same, there would be no acquiescence on his part, and he might properly appeal, or contest the right of the plaintiff in any other manner known to the law. *Hartshorn* v. *Potroff*, 89 Ill. 509. But the voluntary acceptance by the defendant of the damages assessed and awarded to him by the judgment, with a knowledge of all the facts, precludes him from afterwards controverting the rights of the plaintiff as established by the judgment. Nor is it material in such case that the judgment may have been erroneous, or even void. In *Kile* v. *The Town of Yellowhead*, 80 Ill. 208, which was a prosecution for obstructing a highway, it was contended that the proceedings for establish-

ing the highway were void, for the reason that they did not conform to the statute. The court said: "After the road was ordered to be opened, appellant was paid and accepted $75, as the amount of damages awarded him by the commissioner of highways for the location and opening of the highway. This estops him from alleging that the proceedings were void." To the same effect are *Town* v. *The Town of Blackberry*, 29 Ill. 137 ; *Rees* v. *The City of Chicago*, 38 Ill. 322 ; *Hartshorn* v. *Potroff, supra; Karber* v. *Nellis*, 22 Wis. 215 ; *Felch* v. *Gilman*, 22 Vt. 38 ; *Hawley* v. *Harrell*, 19 Conn. 142. In *Sherman* v. *McKeon*, 38 N. Y. 266, it was held that where real estate had been condemned and taken by the city of New York for the purpose of widening a street, and the owner accepted the damages awarded, the receipt of the money by him was an expression of consent to the taking of the property by the city, and estopped him, and those claiming title under him, from alleging an unconstitutional taking of the property for private purposes.

The same doctrine was laid down in *Embury* v. *Conner*, 3 N. Y. 511. In *Whittlesey* v. *The Hartford, etc., R. R. Co.*, 23 Conn. 421, and *Hitchcock* v. *The Danbury, etc., R. R. Co.*, 25 Conn. 516, it was held that where real property had been appropriated by a railroad company, and had been taken possession of and used for railroad purposes, the owner could not, after having received the damages assessed in his favor, question the regularity of the proceedings which resulted in the condemnation and assessment.

In *Burns* v. *The Milwaukee, etc., R. R. Co.*, 9 Wis. 450, it was held that where condemnation proceedings had been had for the appropriation of two full lots belonging to the plaintiff, although more land was taken than the statutory right of way, the owner could not, after accepting the damages awarded for the entire property, question the legality of the proceedings or of the appropriation. The court said : "We think the respondent stands in no better position than

Test *et al. v.* Larsh *et al.*

as though he had conveyed the lots to the company by deed and received his pay, and then sought to reclaim them by this proceeding.''

A like principle is recognized in the following cases :  If one accepts a beneficial interest under a will, he is precluded from setting up any title or claim in himself, whereby to defeat the will in any of its provisions. *Smith* v. *Guild*, 34 Me. 443 ; *Thellusson* v. *Woodford*, 13 Ves. 209 ; *Hyde* v. *Baldwin*, 17 Pick. 303 ; *Weeks* v. *Patten*, 18 Me. 42 ; *Lee* v. *Templeton*, 73 Ind. 315.   So the receipt by minors, after attaining their majority, of the proceeds arising from the sale of their real estate by their guardian during their minority, with full knowledge of all the facts in regard to such sale, is a ratification thereof, and estops them from denying its validity.   *Pursley* v. *Hays*, 17 Iowa, 310 ; *Deford* v. *Mercer*, 24 Iowa, 118 ; *Lessee of Merritt* v. *Horne*, 5 Ohio St. 307 ; *Morris* v. *Stewart*, 14 Ind. 334 ; *Bevis* v. *Heflin*, 63 Ind. 129.   And one who accepts a part of the purchase-money arising from a sheriff's sale, with a knowledge of defects in such sale, is estopped to deny its validity.   *Stroble* v. *Smith*, 8 Watts, 280 ; *Southard* v. *Perry*, 21 Iowa, 488.

If no proceedings had been taken by the plaintiffs under the statute, but they had agreed with the defendants that $30 would be the amount of damages the latter would sustain by the relocation of plaintiffs' mill, and the digging of the new tail-race, and the defendants had accepted that sum and consented to the improvements contemplated by the plaintiffs, and the latter had proceeded to expend money on the faith of such agreement and payment, this, according to previous rulings of this court, would amount to a license by the defendants, which could not afterward be revoked, unless the licensee could be placed *in statu quo*.   *Snowden* v. *Wilas*, 19 Ind. 10 ; *Lane* v. *Miller*, 27 Ind. 534 ; *Miller* v. *The State*, 39 Ind. 267 ; *Schoonover* v. *Irwin*, 58 Ind. 287.

The arguments presented by the appellees, against the sufficiency of the supplemental reply, are :

1. That the sum paid, $30, was so inadequate that it can not be presumed that the appellees intended to surrender rights so valuable as those they had acquired, for that trifling sum.

2. That the appellees had no election to do anything else than take the money, after the judgment in the common pleas ; that, by the judgment, the appellants had the right to pay or tender the damages awarded, in defiance of the appellees ; that such payment secured to the appellants such rights only as the law gave them, and, as the law gave them no right to injure a mill erected, or in process of erection, the payment could not give them a right to inflict such injury.

This argument appears to us to be unsound in several particulars. It was obligatory on the appellants to pay or tender the damages within one year after the judgment, in order to preserve the rights acquired thereby ; but, if the appellees were dissatisfied with the judgment, they were not compelled to accept the tender, but might have refused it and pursued any legal course to relieve themselves from the judgment. Their acceptance of the damages awarded was, therefore, voluntary, and not compulsory, and such, in effect, are the averments in the supplemental replies.

Furthermore, the answers to which these replies were filed state that the facts as there pleaded existed at the time the sheriff's jury viewed the premises and made their finding in favor of the plaintiffs on their petition, and for the appellees in damages, and the same facts existed when the trial was had and the judgment was rendered in the court of common pleas. These damages were allowed for the injury the appellees would sustain by granting the appellants the right to divert and flow the water as prayed for in their petition. The finding and judgment of the court had been, that all the injury the appellees would sustain by

such diversion and use of the water by the plaintiffs, would be compensated by the payment to the defendants of the small sum of $30, and when the appellees accepted that sum, "as and for their damages and in full payment thereof," as is averred in the replies, they assented to and ratified the finding and judgment that that was the full measure of their damages.

The appellees had no claim upon the appellants except the damages awarded in the judgment, and those damages were given as a compensation for the injury which it was found the appellees would sustain by the granting and exercise of the rights and immunities asked for in the petition of the appellants. There is no rule of law or equity that can uphold the appellees in denying to the appellants those rights and immunities, and yet hold on to the consideration paid for them. That the amount was small does not change the principle; if they can retain the thirty dollars without tendering its price, they could do the same if the award had been one hundred times as much, and they had received it under the same circumstances.

If there were facts that would have avoided the matters alleged in the supplemental replies, or if they were not true, the appellees should have accepted the issue tendered, and introduced such facts in evidence on the trial, or put the appellants to the proof of the allegations of the reply. By demurring, they admitted the facts charged, and we think that the averments, that within one year after the judgment the appellants paid, and the appellees accepted, the amount awarded the latter as damages, precluded the defences set up in the second and third paragraphs of the answer.

The other alleged errors relate to the rulings of the court in excluding certain evidence offered by the appellants, and in instructions given and refused. The evidence on behalf of the defendants below had established the fact, that their dam was not constructed or commenced, nor their head-race

completed, until some months after the commencement of this action by the plaintiffs. The latter, in support of the second and third paragraphs of their reply, offered to prove by a competent engineer and surveyor, and by a number of experienced millers, that, between their dam and the mouth of the tail-race of the mill of the defendants, there was a fall of ·23.27 feet; that the fall appropriated by the plaintiffs at their old mill was 8.43 feet, and the additional fall sought to be appropriated by them, in this proceeding, was about three feet, and that there would then be left to the defendants a fall of 11.84 feet, which would be amply sufficient to run the mill of the defendants; that said fall could be readily appropriated and used by the defendants by constructing a dam on their own land at a point within a few yards of the line of their head-race, and where the water could be readily turned into said race; that a dam for such purpose would have to be only 143.46 feet in length, and not more than 3.30 feet high at its highest point, which dam could be constructed at a cost not exceeding $300; that a dam so constructed would afford ample water power for the mill of the defendants, and would not interfere with the plaintiffs in the use of the water as prayed for in their petition; also, that no dam could be constructed at the location selected and occupied by the defendants, without abutting the same on the land of the plaintiffs on the west side of the stream, nor without flowing back the water upon the lands of the plaintiffs, and upon and injuring their old factory, and that water could not be taken out at said dam of the defendants without diverting the same from the lands of the plaintiffs upon both sides of the stream.

The bill of exceptions states that the evidence so offered was excluded solely on the ground that said facts were immaterial, the court announcing at the time that the second and third paragraphs of the reply did not constitute any bar to the matters alleged in the answer of the defendants, and

that no evidence would be admitted in support of said paragraphs. A reference to the opinion of this court, when this case was first here, as *Larsh* v. *Test*, shows that substantially the same evidence rejected as above was given upon the first trial, and it was held that the facts so proved did not preclude the defence of the appellees, that they had commenced the erection of their mill, and had partly excavated their head-race and determined the location of their dam, before the appellants commenced their action.

Whatever our views might be upon this question as an original proposition, we are concluded by the former opinion and judgment in this particular case. In Buskirk's Practice, p. 371, the following is laid down as the rule, when there has been a previous appeal and a reversal : "So, it is settled, that if a cause be appealed to the Supreme Court, and the judgment is reversed, and the cause remanded to the court below for a new trial, and a second appeal is taken, it brings up for review and decision nothing but the proceedings subsequent to the reversal ; none of the questions which were before the court ' and decided on the first appeal can be re-heard and re-examined upon a second appeal." The numerous authorities cited by the author in support of the text were reviewed, and the same doctrine reiterated, in the more recent case of *Dodge* v. *Gaylord*, 53 Ind. 365.

The remaining questions presented by the motion for a new trial come under the same rule, and can not, therefore, be considered.

For the error of the circuit court in sustaining the demurrer to the second and third paragraphs of the supplemental reply, the judgment ought to be reversed.

Per Curiam.—It is therefore ordered, upon the foregoing opinion, that the judgment below be, and it is hereby, in all things affirmed, at the costs of the appellees, and that said cause be remanded to the Wayne Circuit Court for further proceedings in accordance with said opinion.