*G. O.* and *A. O. Behm*, for appellee.

---

Wood and Others *v.* Ostram and Others.

REVIVOR.—PRACTICE.—Where a bill in chancery was pending at the time of the adoption of the code of practice, and afterwards the death of the plaintiff was suggested, and a supplemental complaint filed in the name

of the personal representatives and heirs, it was held that a new summons for the defendants was not necessary.

PLEADING.—Where in a complaint to enforce a trust by the executors and devisees under a will, some of them were expressly named as plaintiffs, and reference was made to a copy of the will annexed for the names of the others, and it was alleged that the suit was prosecuted by all of them, it was held that an objection that the plaintiffs were not named was not tenable.

CODE—EFFECT OF ON PENDING CASES.—Where in a chancery suit pending at the adoption of the code, the prayer of the bill was sufficient to authorize a certain judgment under the then practice, the code did not change the rule as to such cases, or require any remodeling of the pleadings.

PRACTICE.—EQUITABLE ASSETS.—Suit in chancery, begun before the code, to enforce a trust in lands purchased with the money of the plaintiff, and to recover certain other moneys, the proceeds of other lands held under the same trust, and sold to innocent purchasers. The bill alleged that the defendant had fraudulently conveyed certain real estate of his own to a co-defendant, to avoid the payment of his debts. The suit was tried after the code took effect, and a judgment rendered for the recovery of certain lands, for a certain sum in money, and that certain other lands had been fraudulently conveyed, and that they be subjected to the payment of the money judgment.

*Held*, that as the suit was tried after the code took effect, its provisions governed the character of the judgment, and under section 72, the judgment subjecting the lands fraudulently conveyed was correct.

PRACTICE—REVIVOR.—Where, upon the death of the plaintiff, leave was granted to his personal representatives to prosecute the suit, and to file a supplemental complaint, and such a complaint was filed in the name of the executors and of the heirs and devisees, it was held that an objection that the leave did not extend to the heirs and devisees came too late in the Supreme Court.

EVIDENCE.—PARTIES.—In a suit to subject lands alleged to have been fraudulently conveyed, it appeared that one parcel of the land had been conveyed to a person not a party to the suit. On the trial, the defendant offered to prove that that person had paid full value for the tract sold to him.

*Held*, that as the person holding the land was not a party defendant, the judgment could not affect his interest, and hence the evidence was not pertinent to any issue in the case.

*Held*, also, that as the controversy between the parties to the action could be determined without him, he was not a necessary party.

INSTRUCTIONS.—Where an instruction was correct in itself, but was not sufficiently guarded to prevent a possible misapplication by the jury, the court looked at the whole evidence upon the point, and there being no reason to doubt the correctness of the finding, it was held that there was no error.

INTERROGATORIES TO JURY.—Where the defendants asked the court to

instruct the jury, "in the event that they found for the plaintiffs," to answer certain interrogatories, it was held that the instruction was correctly refused.

ESTOPPEL.—PLEADING.—An estoppel *in pais* must be pleaded. Evidence of such a defense cannot be offered under the general denial.

APPEAL from the *Vigo* Circuit Court.

FRAZER, C. J.—This cause was instituted in 1846, under the old practice. It was a bill in chancery. In *October*, 1860, the death of both complainants was suggested, and leave given to file a supplemental complaint by their personal representatives. This was, without objection, immediately filed, not in the names only of the executors and administrators of the deceased, but also in the names of legatees, devisees and successors in interest of the original plaintiffs, who had, by descent or devise, become the owners of whatever estate the original plaintiffs had in the subject matter involved in the controversy. One of the defendants, *John W. Hitchcock*, had been originally summoned, but he had never appeared. No notice of the supplemental complaint was given to him, or to any of the defendants, by summons or otherwise. Another defendant was an infant, who had been originally summoned, and appeared by guardian *ad litem*. It is claimed that, as to these defendants, there was error in proceeding with the cause, because they were not summoned or notified of the supplemental complaint. And it is claimed that such was the chancery practice, and that the code has made no change in that respect.

Where an amended or supplemental bill was filed, we do not understand that the chancery practice required that defendants, who had made default to the original bill, should be subpœnaed to answer the supplemental bill. It was only those who were not in default, and who had answered the original bill, that were entitled to notice of an amended or supplemental bill. Smith's Ch. 309 *et seq.* But where the complainant had died and a bill of revivor had been filed, a subpœna was necessary to all the defendants, because the death abated the suit. But under the

code, it does not abate, and therefore no new summons is necessary, and would be a needless formality. 2 G. & H., §§ 21, 786, pp. 51, 332. By the latter section, it is enacted that a new party, introduced as the representative or successor of a former party, must be summoned, unless he appears voluntarily. *Expressio unius est exclusio alterius.*

The original bill was against *John W. Hitchcock* and *Marcus Hitchcock*, by *Thomas H. Hubbard* and *Mary E. Ostram*, executrix of *John H. Ostram*, deceased, and alleged that in 1835, between said *John W.* and *Ostram*, deceased, it was agreed that *Ostram* should furnish money to *John W.* for the purpose of buying lots in *Terre Haute* and lands near by, in their joint names and for their joint benefit; *John W.* to repay half the money so advanced and secure it by mortgage on his half of the real estate so purchased, and to charge nothing for his time and expenses in purchasing; that in 1835, *Ostram* accordingly advanced $2,200; that in *March*, 1836, *Hubbard* was, by agreement, admitted to share in the venture, from the beginning, by paying $1,071 67, after which he and *Ostram* were to furnish the money, *Hitchcock* to purchase as before, and repay one-third of the money; that they subsequently advanced $3,115 50; that *Hitchcock* fraudulently took the titles in his own name; that amongst the purchases were two lots in *Evansville*, for $2,200, instead of certain lands near *Terre Haute*, as agreed; that in 1836, *Hubbard* and *Ostram* demanded deeds for two-thirds of the lands, and a mortgage to secure one-third of the money advanced; that *Hitchcock* failed to comply with the demand, and is wholly insolvent; that he has made a voluntary conveyance of the real estate, and of all his own property, real and personal, to his father, *Marcus*, in secret trust for his own use; *Marcus* having full notice, and having taken the conveyance to enable *John W.* to defraud the complainants; that *Marcus* had sold one of the lots purchased on joint account to an innocent purchaser, and received the purchase money; that he still holds lots 63 and

Wood and Others *v.* Ostram and Others.

250, in *Terre Haute*, and some of the lands purchased by *John W.* under the contract.

The complainants alleged that they were ignorant as to what other lands, besides the lots in *Terre Haute* mentioned, had been purchased on joint account. They prayed a full discovery touching the matters, and for general relief. *John W.* was defaulted, and *Marcus* answered under oath, in 1847. Pending exceptions to his answer, he died, and a bill of revivor and supplement was filed, making his heirs at law defendants, and process ordered. The heirs of *Marcus*, except *John W.*, answered. After the code took effect, the cause was put at issue by a reply. But in 1855, the death of one of the heirs of *Marcus* was suggested, and his heir at law, *Ellen C.*, an infant, was made a defendant, and duly brought in by publication of notice, and a guardian *ad litem* was appointed and answered for her.

In 1860, the death of both plaintiffs was suggested, and the proceedings followed which are stated in the commencement of this opinion. It is claimed that the new plaintiffs, who then came in, are not named in the supplemental complaint then filed by them. There is, however, nothing in this. Some of them are expressly named as plaintiffs, and all the rest are named in the will, a copy of which was annexed to the pleading, and reference made thereto for their names, it being alleged that the suit is prosecuted by them. The objection is entirely one of form, and is not good under our practice, even upon demurrer, much less on error. In the complaint filed by them, they merely show their right, and allege that since the original bill was filed they have discovered certain facts which then existed but were not known. The evidence is before us. The jury found that the plaintiffs were entitled to recover two-thirds of certain specified tracts or lots of real estate; that the plaintiffs recover of *John W. Hitchcock* $13,016 66; that the conveyances by him to his father were fraudulent, as against the plaintiffs, and that the lands thereby conveyed, except those recovered, ought to be subjected to execution.

There was judgment accordingly. Every question was saved by a motion for a new trial.

Quite a number of questions are presented, in addition to the one already disposed of, all of which we will consider in their order.

It is contended that under the prayer for discovery, for the cancellation of the conveyances to *Marcus Hitchcock*, and for general relief, no judgment or decree for money could properly be rendered against *John W. Hitchcock*, who made default, because the code provides that where there is no answer, the relief granted cannot exceed that which is demanded in the complaint. Section 380. If this position is tenable, the judgment against the other defendants, it is urged, is erroneous, because, to subject the lands in their hands to the satisfaction of a money judgment, itself erroneous, would be error as to them.

Under the chancery practice prevailing when the original bill was filed, the prayer was broad enough to warrant the relief which was granted. Did the code, as applied to pleadings filed in cases pending when it took effect, make that bad or insufficient which was good and sufficient before, and render it necessary that parties should in any case pending go back and remodel such pleadings, so as to make them conform to the code? It is very clear that such was not the intention, but exactly the contrary. 2 G. & H., § 799, p. 336. We think, therefore, that there was no error in the particular alluded to.

It is also urged that the claim against *John W. Hitchcock* for money advanced, and converted to his own use, was a legal claim, and that until it was reduced to judgment there could be no proceedings justified of an equitable character, to subject property held by others to its satisfaction, and hence that such equitable relief in this case was erroneous.

We are of opinion that in chancery the whole case was within the jurisdiction of the court under the old practice, to grant full relief, under the facts stated in the original bill. But we need not discuss that question. The code,

section 72, in force when the case was tried, and which governed the court as to the nature of the judgment (§ 799), puts this question beyond all doubt, as it seems to us.

It is also urged that inasmuch as upon the death of the original plaintiffs, leave was only asked and granted to continue the cause in the names of their personal representatives, the other parties, who joined with them in the supplemental complaint then filed, never had leave to become parties, and hence that it was error to grant them any relief. This objection comes too late. It was not made below, and it is too technical to be first made in this court. If it had been made in the court below, it could have been readily avoided by obtaining formal leave expressly of record, which, upon a showing of their interest, it would have been error to refuse, under the twenty-first section of the code, and the question, therefore, falls peculiarly within that class which, by the repeated decisions of this court, under the code, it has been held will not be listened to here, unless first presented to the court below.

Upon the trial, it appeared that one of the tracts of land conveyed by *John W. Hitchcock* to his father had been conveyed by the latter to one *Deming*. It was sought to subject this land to the payment of the money judgment which the plaintiffs claimed and obtained against *John W. Hitchcock. Deming* was offered as a witness to prove that he had paid the full value of the land by the satisfaction of mortgages thereon, existing prior to the conveyance by *John W. Hitchcock* to *Marcus.* The evidence was rejected, and the appellants claim that this was error.

There was no issue to which the evidence offered would have been pertinent. *Deming* was not a party to the suit, and therefore the decree against the land, which was sought and obtained, could not bind him or affect his title. The only question upon which the evidence offered bore, could not possibly have been determined in the suit, and it seems to follow that the court was correct in rejecting it.

It is undoubtedly true, as argued for the appellants, that

in order to a complete determination of the question as to the liability of the tract of land conveyed to *Deming*, he was a necessary party. But the controversy between the parties before the court could be determined without him, and, as we have seen, his rights could not be affected by that determination. It follows, therefore, in view of the express provisions of the twenty-second section of the code, that he was not a necessary party to the suit. So far as the defendants were affected by the decree against that tract of land, there was no error in it; and if, as to *Deming*, it was erroneous, or void, he, and not they, can call it in question. As to them, the only appellants here, that part of the decree is, at worst, merely harmless. It purports to make *Deming's* property liable to execution to satisfy a judgment which should be levied altogether out of their own, and, if it had any force as against him it is impossible to see how the appellants could be injured by it.

The sworn answer of *Marcus Hitchcock* was put in evidence by the plaintiffs, and the court instructed the jury that "an answer sworn to requires no more evidence to disprove than one not sworn to, and the cause is to be tried under existing laws." This instruction, admitted to be correct as an abstract proposition, was, it is claimed, erroneous in this case, for the reason that its effect was necessarily to lead the jury to disregard as evidence any part of the answer which tended to support the defense. Such an effect upon the jury could only result from a misapprehension which we cannot assume existed. The instruction related to the answer as a pleading, and not as an instrument of evidence; it was pertinent to the case because the answer was sworn to, and though it might, possibly, have been misapprehended and misapplied by the jury to the answer, as evidence offered by the plaintiffs, yet there is nothing in the case to justify the belief that the jury did, in fact, misapply it. Indeed, in the only particular in which the answer tended, and in that respect it did but slightly, to support the defense, the *bona fides* of the purchase by *Mar-*

*cus*, the evidence is so overwhelmingly in favor of the plaintiffs as to leave no question as to the correctness of the finding upon that point. The court should have better guarded the instruction against its application to the answer as evidence, and if the whole evidence left any reason to doubt the correctness of the finding upon the point in reference to which it was liable to mislead, the question before us would be a different one.

The appellants asked that the jury be required to respond to certain interrogatories, "in the event that they should find for the plaintiff." This was refused, and we think correctly. Whether or not interrogatories shall be answered, must, under the statute, depend solely upon the fact that a general verdict shall be found, without reference to the question as to who shall succeed in obtaining the general verdict. 2 G. & H., § 336, p. 205. The party asking such interrogatories must suffer the legal consequences of the findings thereon, if the general verdict be in his favor, as well as claim the advantages thereof in case the general verdict be against him. If a figure of speech may be allowed, this weapon must have not only two edges, but also a hilt for each of the parties.

Evidence was offered by the appellants, and rejected by the court, to the effect that in 1849, after the filing of the original bill and *Marcus'* answer, the latter specifying lots one and eight, in *Deming's* division, as amongst the real estate conveyed to him by *John W.*, they applied to one of the attorneys of the plaintiffs, and informed him that they wished to sell those lots, and inquired of him if the plaintiffs had, or intended to set up any claim to them; that a negative answer was given, and thereupon they sold the lots. This ruling is questioned by the appellants. No estoppel was pleaded, and we do not perceive that the evidence would have been pertinent to any issue made by the pleadings. As an admission, it is not contended that it was competent, but only as an estoppel, and it is argued that the estoppel need not be pleaded. It is true, that in the *Welland*

*Canal Co.* v. *Hathaway.* 8 Wend. 481, it was said that "estoppels *in pais* cannot be pleaded, but are given in evidence." The question was in no manner involved in that case.

But whatever may have been the rule formerly, it seems to us that under our code of procedure the matter is made very clear. A denial admits proof of no affirmative defense, as the general issue did. It merely puts the plaintiff upon the proof of his averments, and authorizes the defendant, by his evidence, to controvert their truth. He can offer no evidence which proceeds upon the ground that the complaint is true, but that there are other facts which preclude the plaintiff's recovery, notwithstanding. What is an estoppel *in pais?* It is some fact, because of which, a man is precluded from saying even the truth. It does not controvert the truth of the matter at all, but is merely assigned as a reason why the adversary should not be permitted to avail himself of it. It is new matter constituting a defense, and must, therefore, be pleaded. 2 G. & H. 87.

The remaining questions are as to the sufficiency of the evidence, in certain particulars, to sustain the finding. The magnitude of the case, and the care with which it has been presented by the appellants' counsel, have induced us to examine the evidence very carefully, and the result is that we cannot but approve the verdict.

The judgment is affirmed, with costs.

*J. P. Baird, C. Cruft,* and *W. Mack,* for appellants.

*S. Claypool, C. E. Hosford,* and *P. Brown,* for appellees.