| 76 | 381 |
|---|---|
| 134 | 552 |

| 76 | 381 |
|---|---|
| 144 | 60 |
| 144 | 72 |

| 76 | 381 |
|---|---|
| 149 | 371 |
| 150 | 173 |

| 76 | 381 |
|---|---|
| 155 | 402 |

No. 7320.

## ROBBINS v. MAGEE ET AL.

COMPOSITION AGREEMENT.—*Voluntary Assignment.—Real Estate.—Conveyance for Benefit of Creditors.*—Where a grantor, by an ordinary warranty deed, without conditions or limitations therein expressed, conveys land to certain grantees named in the deed, without indicating that the grant is to them as trustees and without any directions therein as to how the property shall be disposed of, but at the same time executes an agreement with the grantees which shows that they take the property as trustees, and as such are to sell it and apply the proceeds thereof to the payment of the grantor's creditors who may become parties thereto, the transaction must be regarded as a composition agreement between the grantor and his creditors, and not as a voluntary assignment under the statute.

SAME.—A composition agreement depends for its force upon the mutual agreement of all the contracting parties, but a voluntary assignment is the act of the debtor alone, and is not dependent for its validity upon the consent of the creditors; it being valid without their consent, if made in good faith and in compliance with the statute.

SAME.—*Statute Construed.*—The statute providing for voluntary assignments, 1 R. S. 1876, p. 142, was not intended to prevent a debtor from making a contract with his creditors, by which his property is conveyed to trustees to be disposed of for his benefit as well as his creditors.

SAME.—*Deed.*—*Delivery.*—*Escrow.*—*Estoppel.*—The delivery of a deed by one in whose possession it is placed to be delivered only upon condition, before a compliance with the condition, is invalid; such deed passes no title to the grantee, and the grantor may assail and overthrow it. In such case, the grantor is not estopped to set up the invalidity of the deed, by acting upon the belief that the condition imposed had been complied with before its delivery to the grantee.

ESTOPPEL.—Where a party acts in excusable ignorance of a material fact, he is not thereby estopped.

SAME.—*Pleading.*—An estoppel must be specially pleaded, and the facts must be stated with fullness and certainty, and so as to constitute a complete bar to the cause of action stated in the complaint.

SAME.—*Answer.*—An answer, setting up an estoppel by conduct, must show that the defendant relied upon the plaintiff's representations or conduct, was influenced thereby, and was ignorant of the truth.

PLEADING.—*Answer, Insufficiency of.*—*Practice.*—An answer insufficient as to a part of the defendants uniting in it, is so as to all.

SAME.—An answer which neither denies nor avoids the allegations of the complaint is insufficient.

SAME.—*Demurrer.*—An answer professing to answer the entire complaint, but answering only a part, is insufficient on demurrer.

DEED.—*Alteration of.*—*Fraud.*—*Defence.*—No affirmative defence can be maintained upon a deed which has been fraudulently altered, by the party who made the alteration.

SAME.—*Purchaser in Good Faith.*—*Representations of Grantor.*—Where one purchases in good faith from the grantee who made such alteration, but without knowledge thereof, and acting upon representations of the grantor in the altered deed, he obtains a good title thereunder.

SAME.—*Escrow.*—*Estoppel.*—*Secret Directions as to Delivery.*—Secret instructions to a depositary as to the delivery of a deed will not avoid the effect of the conduct of the grantor open to the observation of those with whom he deals, and upon which they rely in relation to the delivery of such deed and its effect.

WRITTEN INSTRUMENT.—*Contract.*—*Mistake.*—Where parties commit their agreement to writing, the written instrument is considered as correctly expressing all the terms of the contract, unless a mistake therein be shown by the party alleging that the agreement is not properly expressed by the writing.

SAME.—*Agreement between Debtor and Creditors.*—If a written agreement between a debtor and his creditors as to the delivery of a deed executed by him for his and their benefit, and in the hands of a depositary, correctly expressed the contract of the parties, the debtor could not render the terms ineffective by instructions privately given such depositary.

SAME.—*Mistake.*—*Description.*—*Will.*—A mistake in the description of property intended to be conveyed by a deed may be corrected as be-

Robbins *v.* Magee *et al.*

tween the original parties.   There is a plain distinction between mistakes in wills and mistakes in deeds.

From the Rush Circuit Court.

*T. B. Adams, L. T. Michener, B. F. Love, L. Sexton, C. Cambern, G. B. Sleeth* and *J. W. Study,* for appellant.

*C. Ewing, J. K. Ewing, J. D. Miller, F. E. Gavin* and *W. B. Wilson,* for appellees.

Elliott, C. J.—This action was commenced by the appellant in the Decatur Circuit Court, and the venue afterwards changed to the Rush Circuit Court.

The complaint of the appellants is in four paragraphs.   In the first paragraph it is alleged that the appellant was the owner of certain real estate on the 17th day of December, 1871, and of a large amount of personal property ; that on that day he executed a deed of assignment to Ralph Magee for said real estate for the benefit of his (appellant's) creditors ; that at the same time a written agreement was executed by appellant and the appellees ; that at the time of said assignment the appellant was in failing circumstances, and largely indebted to other persons, not parties to the aforesaid agreement, nor included within the list of creditors in the said assignment ; and that the said assignment was made under the act concerning voluntary assignments approved March 5th, 1859.   Copies of the deed of assignment and of the agreement executed contemporaneously with it are set forth.   It is charged that the assignment was invalid for the following reasons : It was not made for the benefit of all of the creditors of the assignor ; it was not accompanied by a schedule containing a particular enumeration of all the personal property assigned ; the schedule was not sworn to before an officer authorized to administer oaths as required by the act aforesaid ; that the deed was not properly acknowledged ; that the deed was not recorded according to law, and that the trustees did not take the oath required by statute.   The second paragraph alleges, in substance, that

the deed of assignment was delivered as an escrow to one Scobey, to be held by him until all the creditors of appellant had signed the written agreement; that Scobey fraudulently delivered said deed before the creditors had signed the aforesaid agreement. The third paragraph contains allegations, in effect, the same as those of the second, with the additional averment that the grantees in the deed of assignment fraudulently altered the same by erasing the word "nine" and inserting the word "ten," after the word "town." The fourth paragraph alleges that a mistake was made by the scrivener who drafted the deed; that the mistake consisted in omitting from said instrument a provision that the grantees therein should not sell the real estate therein described, for less than $50 per acre, and also in omitting the provision, that "This deed shall not take effect until all of Robbins' creditors have signed the written agreement of this date."

Demurrers were filed to these paragraphs, and were overruled as to all, except the first.

The questions which first require our attention are those arising upon the ruling sustaining appellees' demurrer to the first paragraph of the complaint. Appellant contends that the transaction of December 17th, 1872, is a mere voluntary assignment, made under, and governed by, the act of March 5th, 1859, and that, as the provisions of that act were not complied with, the assignment must be deemed fraudulent and void. The contention of the appellees is, that the transaction is not to be treated as a voluntary assignment for the benefit of creditors, but as a contract of composition between a debtor and his creditors. Appellant's argument rests entirely upon his assumption that the assignment was a voluntary one for the benefit of creditors; and, if this is groundless, the whole argument falls. The deed executed by the appellant and his wife is an ordinary warranty deed, in the statutory form, and names Ralph Magee and Dana

Schultz as grantees. There are no words indicating that the grant is to them as trustees, nor are there any directions as to how the property conveyed shall be disposed of. In short, the deed is an absolute one without conditions, limitations or covenants, save only the general one of warranty on the part of the grantors. The agreement executed contemporaneously with the deed shows that Schultz and Magee were to take the property conveyed as trustees, and as such sell it and apply the proceeds to the payment of the creditors of the appellant. We think the transaction must be regarded as a composition agreement between the appellant and his creditors, and not as a mere voluntary assignment. A composition is effected by this agreement with all the creditors ; for, by its terms, all are entitled to its benefits who choose to become parties to it. The contract under mention differs very widely from a mere voluntary assignment ; for it is the mutual contract of the debtor and his creditors, dependent for its validity upon the assent of all the contracting parties. Whereas a voluntary assignment is the act of the debtor himself, and in no way dependent for its validity upon the assent of the creditors. In the one case, the assent of the creditors gives the contract force ; in the other, their assent can neither strengthen nor weaken the act of the debtor. The act of 1859 uses the term "assignment," and uses it in its ordinary sense, as meaning the transfer of property by the owner. That this is the meaning annexed to the word, is plain ; for all the provisions of the statute, from first to last, proceed upon the ground that the assignment of the property is the debtor's act, unaccompanied by any agreement of his creditors, or that of any other person. The statute was not intended to prevent a debtor from making a contract, with his creditors, by which his property is conveyed to trustees to be disposed of for his own benefit, as well as that of his creditors. The distinction between a voluntary assignment and a composition contract has been recognized

and enforced by this court since the enactment of the statute concerning voluntary assignments. *Pontious* v. *Durflinger*, 59 Ind. 27; *Seving* v. *Gale*, 28 Ind. 486. The case of *Collins* v. *Kemp*, 29 Ind. 281, is in principle the same as the case in hand. There, the debtor conveyed his property by way of mortgage to secure debts due to all of his creditors, and it was insisted that this was an assignment within the act of 1859. The court there said: "It is claimed that the instrument set out as a mortgage * * * is, by the allegations of the complaint, an assignment for the benefit of creditors, within the meaning of the act of March 5th, 1859, * and is therefore void. We hold that it is not an assignment within the meaning of the statute." While it is true that the case cited and the one in hand are much alike, it is still true that the latter is much the plainer; for here we have the express agreement of debtor and creditors.

The appellees united in an answer, to the first and third paragraphs, of which demurrers were overruled, and of this ruling appellant here complains. The first paragraph of the joint answer was addressed to the second, third and fourth paragraphs of the complaint. The allegations of the complaint, as to the former ownership of the real estate in controversy, and as to the execution of the deed and agreement as therein stated, are expressly admitted by the answer, and it is then alleged, in substance, that, when the said instruments were executed, the appellant was indebted in a sum beyond the value of his property; that his property was in danger of being sacrificed by a forced sale; that, to avert this danger, and in consideration of the agreement of the creditors to allow appellant six hundred dollars of property, the said instruments were executed; that Schultz and Magee entered upon the duties of their trust; that, in execution of such trust, they sold part of the real estate to the appellee Styers, who paid a valuable consideration therefor; that the said Schultz entered into a written agreement with said appellant, of which the following is a copy, to wit:

"By this agreement it is witnessed that we bind ourselves unto Jacob F. Robbins, that, if he furnishes a man to advance for him thirty-six dollars per acre, and one hundred dollars within twenty days from this date, for the tract of land which Schultz and Magee have contracted to William Styers this day; and, also, to repay ten per cent. on the advances made by Styers, and will accept said Robbins' mortgage for said sum, so that he, Robbins, may have an opportunity to pay it, and retain for two or three years its possession, the legal title thereto shall be conveyed to the said Robbins, so that he can mortgage it; but this loan must be secured, and the money ready for our use, within twenty days from this date, and it shall be ready at the time the title is demanded, and if said Robbins fails to furnish the person to do as indicated within said time, this contract shall be void, and said Robbins is to surrender possession according to his agreement heretofore made with Schultz and Magee.

"Dated at Greensburg, January 30th, 1874.

"DANA SCHULTZ,
"J. E. ROBBINS,
"JACOB F. ROBBINS."

That Styers took possession of the said real estate; that the purchase-money paid by Styers was all paid to the creditors of the appellant, without objection from Robbins; that, after the conveyance to Styers, some person, to appellees unknown, without their knowledge and consent, caused the deed executed to Magee and Schultz to be altered. It is also averred that the appellant had full knowledge of the payment by Styers of the purchase-money of said real estate. All of the allegations of the complaint charging fraud against the appellees are specifically denied. The facts set forth are pleaded as an estoppel.

It is contended by appellant's counsel that this answer is bad for the reason that it does not aver that he did have knowledge that Scobey had delivered the deed to the

grantees therein named, in violation of the condition imposed by the grantor when it was placed in his hands as an escrow. The delivery of the deed by Scobey, in violation of the condition upon which it was placed in his possession, was not a valid delivery. *Berry* v. *Anderson*, 22 Ind. 36 ; 3 Washb. Real Prop. 303 *n*., 4th ed.

The delivery of the deed not having been such as gave it force, no title passed to the grantees, but it remained in the grantor. Unless the grantor, by his subsequent acts, had estopped himself to set up the invalidity of his first deed, he had an undoubted right to assail and overthrow it. If he was ignorant of the material and important fact, that the deed had been delivered by the person to whom it was entrusted as an escrow, in violation of the trust and authority conferred, then the doctrine of estoppel can not justly apply to his subsequent conduct as developed by this answer.

Appellant was neither negligent nor imprudent in acting upon the belief that the condition imposed when the deed was placed in the hands of Scobey had been complied with before its delivery to the grantees. The doctrine, that a person who does an act in excusable ignorance of a material fact is not thereby estopped, is founded in sound reason, and is well sustained by authority. In *Fletcher* v. *Holmes*, 25 Ind. 458, the subject here under discussion received a full and careful consideration, and it was said : "For the prevention of fraud, the law will hold a party to be concluded by his own act or admission. Surely this can have no application where everything was equally known to both parties, or where the party sought to be estopped was ignorant of the facts out of which his rights sprung."

It was said in the case of *Long* v. *Anderson*, 62 Ind. 537, that, "In the second and third paragraphs of his answer, the appellant has endeavored to defend against this latter breach only of the alleged warranty, by showing and stating certain facts which tended, if true, to estop the owner of said real

estate * * from asserting any ownership of or title to the said property. Each of said paragraphs of answer was bad or insufficient, on the appellee's demurrer thereto for the want of sufficient facts, for the reason that it was not alleged, in either of said paragraphs, that the owner of said real estate was fully apprised of her legal rights, as such owner."

In *The Greensburgh, etc., T. P. Co.* v. *Sidener*, 40 Ind. 424, BUSKIRK, J., speaking for the court, said: "To constitute a valid estoppel by conduct, there must be knowledge on the part of the party sought to be estopped, and a want of knowledge on the part of the party relying upon the estoppel."

Of the many recent cases approving the doctrine of *Fletcher* v. *Holmes*, *supra*, we cite *Lash* v. *Rendell*, 72 Ind. 475; *Hudson* v. *Densmore*, 68 Ind. 391; *Stewart* v. *Hartman*, 46 Ind. 331.

Appellees, in replying to the argument of appellant's counsel, assert that, as the appellant took an active part in negotiating the sale to Styers, the rule that knowledge must be shown does not apply, and we are referred, in support of this position, to *Barnes* v. *McKay*, 7 Ind. 301. It was said in that case, that "It may be that the appellant was ignorant of her legal rights in respect to the tract in controversy; but although she may have been ignorant of her rights, she can not avoid the effect of her assurances to an innocent party that he might safely buy, for by them she assumed to know the facts on which her title rested."

If this were conceded to be a correct statement of the law, it would yield appellant no support, for these, among other, reasons: 1st. The answer is by all of the defendants, the grantees in the original deed and the parties to the original contract. As to these grantees and parties, it is certainly not a good answer, for they were chargeable with notice of the transaction in which they were active participants. An answer, bad as to a part of the defendants unit-

ing in it, is bad as to all.    2d. The answer does not aver that appellant made any representations upon which Styers, the purchaser, acted.    It is not intimated that Robbins ever gave Styers any assurances concerning the title of Schultz and Magee.    It is not even shown that appellant took any part at all in the negotiations which resulted in the purchase.    3d. The answer does not show that Styers relied upon the conduct of the appellant, nor that he was at all influenced by anything said or done by the former.    4th. It does not show that Styers was not a purchaser with full knowledge of the circumstances attending the surrender of the deed by Scobey to the grantees therein.

It is insisted by appellees, that, as the answer shows that Robbins received part of the first payment of $1,000 made by Styers, the purchaser, he is estopped to question the title of such purchaser.    The allegation upon this point is as follows:    "And a portion of which one thousand dollars was paid to said Jacob F. Robbins."    The pleader does not aver how much of the money was paid appellant; whether it was one cent or one dollar, the court is not informed.    In setting up the defence of estoppel, facts must be stated with fullness and certainty.    In *Lash* v. *Rendell, supra,* the court quoted and approved Lord Coke's famous saying: "Every estoppel, because it concludeth a man to allege the truth, must be certain to every intent, and not to be taken by argument or inference."    A party who relies upon an estoppel should, in his pleading, state all material facts, and so state them that the court can decide, as a matter of law, that they conclude the adverse party from setting up the truth.    Under the code, the defence of estoppel must be specially pleaded, and so pleaded as to constitute a complete bar to the cause of action stated in the complaint. *Wood* v. *Ostram,* 29 Ind. 177: Pomeroy Rem., sec. 712.

The court could not, in an ordinary case, presume, under the allegations of this answer, that anything more than a

mere nominal sum was paid, and certainly the court can not presume that the sum paid was material or important where the defence is one of such a character as that which the answer attempts to interpose to the appellant's complaint. Retention of money received, when a man is entirely ignorant of his rights, ought to be shown to be of such a material character as to equitably preclude him from averring the truth. *Terrell* v. *Grimmell*, 20 Iowa, 393.

The inference in cases of estoppel is against, and strongly against, the party who pleads it. He must state all the elements which are necessary to create a valid estoppel. Nothing can be supplied by intendment in favor of an alleged estoppel. A defendant who seeks to shut out the truth must plead all the material facts with certainty. In such cases it is the pleader's duty to keep in mind the rules of pleading applicable to such defences, and to frame his answer in accordance with their requirements, strict and exacting though they are.

Another allegation of the paragraph of the answer under mention requires brief notice, and that is the following: "That the plaintiff, with full knowledge that the deed and contract mentioned in the complaint had been delivered to Schultz and Magee, rented of said Schultz and Magee said lands and accepted the same as their tenants for one year." The infirmity in this branch of the answer is, that it neither denies nor avoids the charge of the complaint, that the deed was delivered in violation of the condition upon which it was placed in Scobey's custody. The answer confesses, but does not avoid. The question was not as to whether there was a delivery to the grantees, but whether it was a valid one.

The third paragraph of the joint answer professes to answer the third paragraph of the complaint. The purpose of the pleader evidently was to state such facts as entitled the appellees to affirmative relief, by securing the reformation of

a mistake in the deed executed by the grantor. The plea, however, is addressed to the whole of the third paragraph of the complaint, and professes to be an answer to the cause of action therein stated. It does not fully answer the paragraph of the complaint to which it is addressed; for no answer at all is made to the allegation, that the grantees had fraudulently altered the deed. That allegation is neither denied nor avoided. It is a familiar rule of pleading, that an answer professing to answer an entire complaint, and answering only a part, is bad on demurrer. In order to escape the force of this rule the appellees argue that the rule, that a material alteration vitiates an executory contract, does not apply to executed contracts. It is said by counsel that, "After the title has once passed under an executed contract, it is not divested by any subsequent alteration or destruction of the deed. After delivery, it has performed its full office." If it were fully conceded that the law is, that, where a deed has been executed and title vested, its subsequent alteration would not divest title, appellees could take no benefit therefrom in this case, for the question here is, not whether a vested title shall be disturbed, but the question is, whether a grantee can ground a right of action or defence on a deed which has been by him fraudulently altered. The appellees are grounding their claim to affirmative relief upon a deed which, according to the undenied allegation of the complaint, was fraudulently altered by them. There is a broad distinction between a case where a party asserts a right to have judicial assistance, and founds his right upon a deed wrongfully altered in a material part, and a case where his adversary seeks to divest a vested title, upon the ground that, subsequent to the time such title vested, the grantee wrongfully altered the deed. Professor Greenleaf says: "If the estate lies in grant, and can not exist without deed, it is said that any alteration by the party claiming the estate will avoid the deed as to him, and that therefore the estate itself, as

well as all remedy upon the deed, will be utterly gone." 1 Greenleaf Evidence, sec. 568.

With the first branch of Professor Greenleaf's proposition we have here no direct concern, but the latter, if correct, exerts an important influence upon the case. If all remedy upon an altered deed is, as the author quoted says, utterly gone, then the appellees clearly had no foundation upon which to rest their claim to the affirmative relief sought by the answer under examination. The case upon which appellees so confidently rely, *Woods* v. *Hildebrand*, 46 Mo. 284, S. C., 2 Am. R. 513, recognizes the doctrine that a deed which has been fraudulently altered will not furnish ground for invoking judicial aid. Cases are there cited which expressly declare this doctrine, among them the following : *Withers* v. *Atkinson*, 1 Watts, 236 ; *Chesley* v. *Frost*, 1 N. H. 145 ; *Alexander* v. *Hickox*, 34 Mo. 496.

The answer is without any support at all, unless the deed be deemed to entitle the appellees to the relief sought. To permit the appellees to secure the relief sought would be to furnish them a remedy upon an instrument which they themselves had fraudulently altered, and would be allowing them to enforce a right dependent entirely upon a contract which by their own wrongful act they had so changed as to make it essentially different from that which the parties actually executed. It has been often held that no action or defence can be maintained upon an instrument which has been altered in a material part, and, upon the same principle, it must be held that no affirmative defence can be maintained upon a deed which has been fraudulently altered, by the party by whom the alteration was made. *Dietz* v. *Harder*, 72 Ind. 208 ; *Hamilton* v. *Wood*, 70 Ind. 306 ; *McCoy* v. *Lockwood*, 71 Ind. 319 ; *Collier* v. *Waugh*, 64 Ind. 456 ; *Schnewind* v. *Hacket*, 54 Ind. 248.

We may remark, by the way, that there are very many cases to the effect, that any fraudulent alteration of a deed

made by the grantee will avoid it, whether the alteration is of a material or an immaterial part.   1 Greenl. Evi. sec. 568 *n.*   That question, however, is not here directly presented.

In addition to the joint answers filed by the appellees, separate answers were also filed by Styers and Magee.   It is insisted that the court erred in overruling the demurrer to the second paragraph of the separate answer of Styers. This paragraph alleges that a mistake was made in describing the lands intended to be conveyed by the scrivener who drew the deed executed by appellant to Magee and Schultz; that this mistake was afterward corrected by and with the consent of the appellant; and facts are also pleaded clearly showing that there was a mistake in the description, which the appellee Styers was entitled to have corrected.   It is also alleged that Robbins knew of the sale made by Magee and Schultz to him, Styers; that thereafter the appellant contracted to buy said land within twenty days from the date of said contract, at the same price at which it had been sold to Styers; that said Robbins endeavored to borrow money to pay for said land; that he failed to do so; that thereafter the said Styers paid in full for said land, without any knowledge that said deed had been delivered as an escrow, and without any knowledge that any alteration had been made in said deed; and that the said Magee and Schultz, with the knowledge and consent of the said Robbins, conveyed the land to him, Styers, and put him in possession thereof.   The answer ought, perhaps, to be made more certain and definite, but we think there is enough in it to show that Styers purchased in good faith and for a valuable consideration the land in controversy, and that the appellant confirmed and ratified, so far as concerned Styers, the delivery of the deed by Scobey.   It certainly does show that appellant caused the description in the deed to be corrected, and that, by his active participation in the transaction, he induced Styers to believe that Schultz and Magee had a perfect

right to convey the land in controversy. In our opinion, such acts were done by the appellant as entitled the purchaser to act upon the belief that the trustees were not only conveying said land under a valid deed theretofore executed by the said appellant, but also that they were doing it at his request.

The facts stated in this answer are not only essentially different from those stated in the joint answer of all the appellees, but the answer is the separate one of a *bona fide* purchaser acting upon the conduct of appellant; whereas, in the joint answer, there were included the grantees, who were expressly charged with the fraudulent alteration of the deed, and with wrongfully procuring its surrender to them. The facts stated in this paragraph of Styers' answer shows not only that the appellant enabled the person to whom the deed was entrusted to do that which appellant now denounces as a fraud, but it also shows that he actively assisted in inspiring the purchaser with a belief that such person at the time his attorney and agent, and the grantees to whom the deed was delivered, were doing that which he, appellant, desired and authorized them to do.

Of the many points argued upon the error assigned upon the ruling denying a new trial, we deem it necessary to consider only a few. The appellant complains of this instruction: "It was competent for the plaintiffs to prescribe the terms on which they would execute and deliver the deed to Magee and Schultz; but, if they agreed on terms with the creditors and trustees, and if these were performed by the latter, and the deed was then delivered by Scobey, it took effect as a conveyance, although secret instructions may have been given to Scobey to hold the deed until other conditions, never suggested to the creditors or trustees by the plaintiffs or Scobey, should be performed."

The complaint is groundless. Secret instructions will not affect third persons, who rely upon the open conduct and

visible acts of a party. A man can not, by secret instructions, avoid the effect of conduct, open to the observation of those with whom he deals.

The second instruction told the jury that the written agreement should be deemed to express all the conditions upon which the deed was to take effect, unless appellees had shown some mistake therein. This was right. Where parties commit their agreement to writing, the written instrument should be held to correctly express all the terms of the contract, unless a mistake therein be shown by the party alleging that the agreement is not properly expressed by the writing.

The third instruction declared that, if there was no mistake in drafting the written instrument, then the appellant would have no right to defeat the appellees by showing that he had given Scobey private instructions not to deliver the deed until all the creditors had signed the agreement. This instruction was properly given. If the written instrument correctly expressed the contract of the parties, appellant could not render its terms ineffective by oral instructions privately given his attorney and agent, for such the evidence shows Scobey to have been. In subsequent instructions, the jury were clearly and fully informed as to the effect of a mistake in the written instrument, and the question, whether there was or was not a mistake, was properly submitted to the jury as a question of fact, in very clear and accurate language.

We do not find it necessary to prolong this opinion by discussing, in detail, the instructions given by the court upon the subject of a mistake in the description of the property conveyed by appellant, nor to give to the instructions asked by appellant upon this subject, more than a brief general notice. A careful examination has satisfied us that the instructions asked by the appellant, and refused by the court, are not correct statements of the law; while those given by the court correctly express the principles of law governing

Robbins *v.* Magee *et al.*

the question.   A mistake in the description of property in-
tended to be conveyed by deed may be corrected as between
the original parties.   The authorities cited by appellant, to
the effect that mistakes in wills will not be corrected, have
no application whatever to deeds.   There is a plain and
well defined distinction between mistakes in deeds and mis-
takes in wills.   The rules which obtain in the case of wills
have no force whatever in cases of conveyances by deed.

In several of the instructions asked by appellant, the doc-
trine is affirmed, that, unless he had notice of the delivery of
the deed by Scobey, he was not estopped by acts subse-
quently performed by him.   We think that the court did
not err in refusing these instructions; for the same princi-
ple is declared, very clearly and fully, in the instructions
given by the court.   Knowledge, as we have already said in
discussing the pleadings, is often a matter of vital impor-
tance, where an estoppel is relied upon as constituting a de-
fence, or as creating a right of action.   The court, in stating
the law to the jury in its own instructions, did not omit to
direct attention to this important element of an *estoppel
in pais*.

We have not discussed many questions argued by counsel,
for the reason that, for the errors pointed out, there must
be a reversal, and it is not likely that these questions will
again arise.

Judgment reversed.