Filed April 20, 1882.

---

No. 10,860.

## ANDERSON ET AL. *v.* HUBBLE.

MILL-DAM.—*Action by Land-Owner Against Mill-Owner.—Back-Water.—Answer of Estoppel.—Fraud.—Negligence.*— In an action by a land-owner against a mill-owner to recover damages for injuries caused to plaintiff's land by water backed thereon by the defendant's mill-dam, alleged to have been raised to an unlawful height, the defendant answered that the dam was of no greater height than it was when he purchased the mill property from its former owners; that when he so purchased he was an entire stranger in that neighborhood, and knew nothing as to the height at which such dam might lawfully be maintained, but that the plaintiff did; that, before he purchased, defendant, upon inquiry with

Anderson *et al. v.* Hubble.

a view to purchasing, was informed by numerous residents of the vicinity, whose lands were affected by the mill-dam, that it was of no more than a lawful height, and had been of that height for more than twenty years; that plaintiff then knew that defendant was making said inquiry, and had been so informed, with a view to purchasing said mill property, but had never informed the defendant that such mill-dam was too high and injured plaintiff's land; and that defendant, relying upon said information, and having no notice that it was incorrect, was permitted by the plaintiff "to purchase said mill property for the sum of," etc.

*Held*, on demurrer, that the facts alleged constitute an estoppel, but that, for want of an averment that the defendant had paid any purchase-money, the answer was insufficient.

*Held*, also, that estoppel *in pais* may arise without a design to defraud.

SAME.—*Joint Tort.*— *Venire de Novo.*—*Record.*—Such owner would not be liable for damages arising during a former ownership of the dam; but where they are sued jointly for an alleged joint wrong, and a joint verdict is rendered against them, and the evidence is not in the record, and no motion for a *venire de novo* is interposed, no question is presented to the Supreme Court.

SAME.—*Special Finding upon Answers to Interrogatories.*—*Practice.*—Where, in such case, there being both a general verdict and answers to interrogatories, the court, at the request of the defendants, found specially as to whether the dam should be abated as a nuisance, a *venire de novo* should have been directed to the verdict and not to the special finding.

SAME.—A mere reference in such special finding to the answers to interrogatories was sufficient without copying them in the finding.

SAME.—*Conflict between Verdict and Answers.*—*Motion for New Trial.*—A motion for a new trial presents no question as to a conflict between the general verdict and answers to interrogatories.

From the Elkhart Circuit Court.

*J. H. Baker* and *J. A. S. Mitchell,* for appellants.

*J. D. Ferrall, R. M. Johnson* and *E. G. Herr,* for appellee.

ELLIOTT, J.—It is alleged in the first paragraph of the appellee's complaint, that the appellant, without right, increased the height of a dam across the Elkhart river, and thereby flooded her land. In the second paragraph a like allegation is made, and it is also charged that the land of the appellee was rendered useless, and that the stagnant water caused an injury to the public health and comfort. It is not necessary to give a more extended synopsis of the complaint as no question is made upon it.

We think the third paragraph of the answer did not set forth any facts not admissible under other paragraphs of the answer which were left standing, and, consequently, that there was no available error in sustaining the demurrer.

The fifth paragraph of the answer of the appellant Scott is, omitting the formal parts, as follows: "That said plaintiff had full knowledge of the height of said dam and of the manner and extent to which the said dam set the water back on her land; that in the year 1879, the defendant, desiring to purchase said mill, made inquiries concerning the dam and the right of the then owners to maintain said dam at the height at which it was then erected, which was the same height which said dam now is; that this defendant was a stranger in the locality of said mill and resided in the State of Michigan, which plaintiff well knew; that defendant was ignorant concerning the rights of the then owners of said mill and was seeking for information upon which to act in the purchase of said mill, as the plaintiff well knew; that he was informed before he purchased, that the said dam as then constructed was at the same height at which it has stood for more than twenty years, and that the owners of the mill had the lawful right against the plaintiff and all others, to maintain said dam at its then height; that plaintiff knew that he was about to purchase said mill and dam and knew that he was inquiring concerning the right of the owners to maintain the dam at the height it then was, and knew that he had been informed that the dam was at the height at which the then owners had the lawful right to maintain it, and no more, and knew that the defendant was ignorant of the truth in the matter of the height of the dam, and that he was inquiring for the purpose of purchasing and was about to purchase, relying on the information above set out, which he had received concerning the rights of the owners of the mill to maintain said dam at its then height, and yet she stood by well knowing of said facts, and permitted the defendant to purchase said mill for the sum of $8,000, without in any

Anderson *et al. v.* Hubble.

manner disclosing to the defendant that said dam raised the water on her land to any greater height than the old dam did."

If this answer pleads facts constituting an estoppel there must be a reversal.

The term "standing by," so often used in the books and reports in discussing cases of estoppel, does not mean actual presence or actual participation in the transaction, but it means silence where there is knowledge and a duty to make a disclosure. In *Gatling* v. *Rodman*, 6 Ind. 289, it was held that the phrase "standing by" does not import an actual presence, but implies knowledge under such circumstances as renders it the duty of the possessor to communicate it. The cases of *State* v. *Holloway*, 8 Blackf. 45, *Ellis* v. *Diddy*, 1 Ind. 561, *Cutherwood* v. *Watson*, 65 Ind. 576, and other cases, approve this definition. In *Richardson* v. *Chickering*, 41 N. H. 380, the definition is accepted as the correct one, and the doctrine of *Gatling* v. *Rodman*, *supra*, expressly approved.

Knowledge is essential on the part of the person sought to be estopped. Where a party is ignorant of his rights, and is free from actual fraud or culpable negligence, silence will not estop him, although he may have knowledge of what another is about to do. *Robbins* v. *Magee*, 76 Ind. 381 ; *Lash* v. *Rendell*, 72 Ind. 475 ; *Hudson* v. *Densmore*, 68 Ind. 391 ; *Stewart* v. *Hartman*, 46 Ind. 331 ; *Greensburg, etc., T. P. Co.* v. *Sidener*, 40 Ind. 424 ; *Fletcher* v. *Holmes*, 25 Ind. 458.

If the person about to act has knowledge, then there can be no estoppel *in pais*. *Robbins* v. *Magee, supra;* *Cole* v. *Lafontaine*, 84 Ind. 446.

In the answer before us there is shown knowledge on the one part and ignorance on the other, and in these particulars the pleading is undoubtedly good. It is not proper to plead evidence, and in the particular named the answer could not well have been more specific without violating this rule of pleading.

Although the appellant may have been ignorant and the appellee fully informed, still, if she was under no duty to dis-

close her rights, then there is no estoppel. The question, therefore, which next presents itself, is whether there rested on the appellee a duty to make known her rights.

The right to maintain a dam at a given height is an incorporeal hereditament, and may, and usually does, form a very material part of the value of mill property. *Scheible* v. *Slagle*, 89 Ind. 323. The appellee knew, in legal contemplation at least, that the easement of flooding lands lying on the stream above the dam depended for its extent upon the height of the dam, and that this easement formed an important and valuable part of the property. This being true, it follows that the appellee knew that the appellant was about to buy property, the value of which depended in a great measure upon the right to enjoy the easement of flooding her lands.

Knowing all the facts, as the plea avers she did, the appellee was, as against the appellant, who was ignorant that the rights of the mill-owners were other than the appearance of the dam indicated, bound to know how far her own legal rights were affected, and she can not be heard to aver ignorance on this point. One who has full and complete knowledge of all the facts, can not, as against an innocent third person, afterwards assert that he was ignorant of the extent of the legal rights which arose out of the facts. Where there is full knowledge of the facts, a person who acts in good faith on the facts, as they are known, can not be deprived of his rights upon the ground that there was ignorance of the full extent of those legal rights. It is knowledge of the facts that controls in such cases, for, where there is full and complete knowledge of the facts on the one side, and honesty and lack of knowledge on the other, there may be an estoppel, although one of the parties may have misconceived his legal rights. *Barnes* v. *McKay*, 7 Ind. 301.

We have shown that the right to maintain the dam at a given height was a valuable property right, and that where there is full knowledge of all the facts there may be an estoppel, although there may be a mistake as to the law, and

we inquire whether the appellee had, under the facts pleaded, a right "in equity and good conscience" to be silent. In the American notes to the *Duchess of Kingston's Case*, 2 Smith Lead. Cas. (7 Am. ed.) 737, it is said: "It has, in like manner, been long and well established in equity, and is now held in most courts of law, that every one who encourages, or stands by and sanctions the acquisition of land by another, will not only be estopped from invalidating the interest thus acquired, by the subsequent assertion of any title which he held with full knowledge at the time, but may be compelled to execute a conveyance to the purchaser." In our own case of *Fletcher* v. *Holmes*, *supra*, the rule is more broadly stated, but not more broadly than the authorities warrant. The language of the court in that case was this: "A mere failure to give notice of a right, where another, without knowledge of the facts, is investing his money, and where it may be fairly concluded that he would not do so if informed of the facts, will generally preclude a subsequent setting up of the claim thus concealed." The opinion in *Junction R. R. Co.* v. *Harpold*, 19 Ind. 347, quotes with approval the following: "If a man, having title to an estate, which is offered for sale, * *stands by* and encourages the sale, or does not forbid it, and thereby another person is induced to purchase the estate, under the supposition that the title is good, the former, so *standing by*, and being silent, shall be bound by the sale; and neither he, nor his privies, shall be allowed to dispute the purchase." 1 Story Eq., sec. 185. It was said in *Gregg* v. *VonPhul*, 1 Wall. 274, that "No one is permitted to keep silent when he should speak, and thereby mislead another to his injury. If one has a claim against an estate and does not disclose it, but stands by and suffers the estate to be sold and improved, with knowledge that the title has been mistaken, he will not be allowed afterwards to assert his claim against the purchaser." There are many cases sustaining this general doctrine, among them: *Morgan* v. *Railroad Co.*, 96 U. S. 716; *Breeding* v. *Stamper*, 18 B. Mon.

175; *Hill* v. *Epley,* 31 Pa. St. 334; *Thompson* v. *Sanborn,* 11 N. H. 201; *Wendell* v. *Van Rensselaer,* 1 Johns. Ch. 344; *Parkhurst* v. *Van Cortland,* 14 Johns. 15; *Buckingham* v. *Smith,* 10 Ohio, 288; *Gregg* v. *Wells,* 10 Ad. & E. 90. In the case last cited it was said: "A party who negligently or culpably stands by and allows another to contract on the faith and understanding of a fact which he can contradict, can not afterwards dispute that fact in an action against the person whom he has himself assisted in deceiving." We think that the facts stated in the answer show that the appellee was in equity and good conscience bound to make known her claim as against one occupying the position of a *bona fide* purchaser. She knew that the appellant was making inquiries with a view to purchasing the property; she knew what the appearance and situation of the property indicated as to the right to maintain the dam; she knew also what his purpose was in making such inquiries and all the facts on which her own legal rights were founded; she had information that he had been told that the mill owners had a right to maintain the dam at the height at which it then was, and that he was about to purchase the property relying on that information. If she misled the appellant by her silence, then she should be held estopped in the event that it is made to appear that he paid value for the property.

It is not necessary in order to the existence of an equitable estoppel that there should exist a design to deceive or defraud. The person against whom the estoppel is asserted must, by his silence or his representations, have created a belief of the existence of a state of facts which it would be unconscionable to deny; but it is not essential that he should have been guilty of positive fraud in his previous conduct. The cases upon this subject were thoroughly reviewed in *Continental Nat. Bank* v. *Nat. Bank,* 50 N. Y. 575, and it was affirmed that there need not be a purpose or intent to deceive or defraud. In *Blair* v. *Wait,* 69 N. Y. 113, it was said: "It is not necessary to an equitable estoppel that the parties should design

to mislead." A very strong opinion is that in *Stevens* v. *Dennett*, 51 N. H. 324, where it is said : " Thus, negligence becomes constructive fraud,—although, strictly speaking, the actual intention to mislead or deceive may be wanting, and the party may be innocent, if innocence and gross negligence may be deemed compatible." We have in our reports many cases illustrating this principle, thus: If a maker of a non-commercial promissory note represents, to one about to buy it, that it is valid, and that there is no defence to it, and the purchase is made on the faith of this representation, an estoppel arises against the maker. *Rose* v. *Teeple*, 16 Ind. 37; *Rose* v. *Hurley*, 39 Ind. 77 ; *Vaughn* v. *Ferrall*, 57 Ind. 182. So, where land is improperly sold by a guardian or administrator, and the heirs accept the purchase-money, they are estopped to afterwards question the purchaser's title. *Morris* v. *Stewart*, 14 Ind. 334 ; *Test* v. *Larsh*, 76 Ind. 452, *vide* p. 462. Again, if a mother approve a deed executed by her infant child, she is estopped to claim as heir, after the child's death, on the ground that the child was not of age. *Johnson* v. *Rockwell*, 12 Ind. 76; *Wiseman* v. *Macy*, 20 Ind. 239. It would overturn all these cases, and many more, to hold that there is no estoppel without a design to defraud, because in none of them was such an element present. There must be such conduct on the part of the person against whom the estoppel is alleged as would make it fraud for him to gainsay what he had expressly admitted by his words, or tacitly confessed by his silence ; but there need not be in the precedent acts actual fraud or evil design. All that is meant in the expression that an estoppel must possess an element of fraud, is that the case must be one in which the circumstances and conduct would render it a fraud for the party to deny what he had previously induced or suffered another to believe and take action upon. As said in *Fletcher* v. *Holmes, supra*, " The door is shut against asserting a right when that would result in doing an injury, by the party asserting it, to some other person, or when, 'in

good conscience and honest dealing, he ought not to be permitted to gainsay' his previous conduct." The element of fraud appears when the effort is made to gainsay or deny the previous conduct. This is sufficient to work an estoppel and bring in the element of moral wrong, and there need be no precedent corrupt motive or evil design. If the effort to deny ought not in good conscience to be successful, then emerges the moral wrong, which the courts denominate fraud.

It is essential to the validity of an equitable estoppel that the person who affirms it to exist should show that he had acted upon the conduct of the other party, and, on the faith of that conduct, and influenced by it, had parted with some thing or some right of value. It is quite clear that one who has not parted with value, or who has not placed himself in a position where he would suffer loss, can have no just reason to conclude his adversary from averring the truth. The answer before us shows that the appellant purchased the mill property for $8,000, but it is not averred that any part of this sum has been paid.

A settled rule of pleading is that estoppels must be specially pleaded and pleaded with great particularity and precision, leaving nothing to intendment. This rule proceeds upon the theory that as an estoppel concludes a party from asserting the truth, all things essential to give the right to shut out the truth should affirmatively appear. *Sims* v. *City of Frankfort,* 79 Ind. 446; *Robbins* v. *Magee,* 76 Ind. 381; *Lash* v. *Rendell,* 72 Ind. 475; *Wood* v. *Ostram,* 29 Ind. 177.

Testing the answer by the rule of pleading we have just stated it falls. We can not presume that the purchase-money was paid, and, unless it was paid, the appellant can not be deemed to have parted with anything of value on the faith of the appellee's conduct.

This defect goes deeper than the mere question of damages. In order that the estoppel can avail the appellant, it must appear that he stands as a *bona fide* purchaser, and this favored position can not be granted him, because it does not appear

that he had paid the purchase-money. 2 Pom. Eq., section 750. In *Lewis* v. *Phillips,* 17 Ind. 108, the court quoted, with approval, the following: "Notice, before actual payment of all the money, although it be secured, and the conveyance actually executed, or before the execution of the conveyance, notwithstanding the money be paid, is equivalent to notice before the contract." This doctrine was held in the early cases of *Gallion* v. *McCaslin,* 1 Blackf. 91 (12 Am. Dec. 208), and *Dugan* v. *Vattier,* 3 Blackf. 245 (25 Am. Dec. 105), and in the later cases of *Rhodes* v. *Green,* 36 Ind. 7, and *Burton* v. *Reagan,* 75 Ind 77. A *bona fide* purchaser is one who has actually paid the purchase-money ; this the appellant has not done, and he is, therefore, not in a situation to deprive appellee of her prior rights.

The owner of a mill is only liable for injuries resulting from the backing of water, which occur after he becomes the owner ; he is not liable for injuries which occurred prior to his acquisition of the property. *Holmes* v. *Drew,* 7 Pick. 141 ; Angell Watercourses, section 510. Scott was not liable, therefore, for injuries which accrued before his purchase.

It is probably true that where the evidence establishes separate and distinct wrongs, a joint verdict can not be sustained, for the defendants are liable not merely for different damages but for different causes. *Simpson* v. *Seavey,* 8 Greenl. 138 ; *Sprague* v. *Kneeland,* 12 Wend. 161 ; *Leidig* v. *Bucher,* 74 Pa. St. 65 ; *Bard* v. *Yohn,* 26 Pa. St. 482 ; *Cunningham* v. *Dyer,* 2 Mon. 50 ; *Richards* v. *Walton,* 12 Johns. 434 ; *Holbrook* v. *Murray,* 5 Wend. 161 ; 2 Hilliard Torts, 463. It is also probably true that an erroneous joint verdict, in a case where the wrongs are distinct and several, is bad as to all of the defendants. *Hall* v. *Williams,* 6 Pick. 232 ; *Grusing* v. *Shannon,* 2 Brad. 325 ; *Richards* v. *Walton, supra; Palmer* v. *Crosby,* 1 Blackf. 139 ; *Allen* v. *Wheatley,* 3 Blackf. 332 ; *Everroad* v. *Gabbert,* 83 Ind. 489, and authorities cited. There are, however, two reasons why the appellants can not

avail themselves of the question sought to be made on the joint verdict in this case:

1st. Where the evidence is not in the record, this court can not determine whether the verdict was sustained by sufficient evidence, and in the present instance the evidence is not in the record.

2d. Where there is no motion for a *venire de novo*, this court can not reverse on the ground that the verdict is insufficient in form or substance, and in this record we find no such motion directed against the verdict.

It is settled that a motion for a new trial does not present the question of conflict between the general verdict and the answers to interrogatories, and that the question of a right to judgment on the answers must be raised in some other mode. *Brickley* v. *Weghorn*, 71 Ind. 497; *Adamson* v. *Rose*, 30 Ind. 380.

The court, at the request of the appellants, found the facts specially upon the issue as to the right of the appellee to have the dam abated as a nuisance, and against this finding a motion for a *venire de novo* was directed, but not against the verdict.

The objection is made that the court adopted the answers of the jury to the interrogatories as part of its finding, and did not again set them out. We see no error in this. The facts were fully of record in the answers to interrogatories, and there was no good reason for burdening the record by repeating them. The reference to them incorporated them in the finding. Broom Legal Max. 522; *City of Indianapolis* v. *Mansur*, 15 Ind. 112.

We think that it clearly appears that the original right to maintain the dam was fixed by the facts found in the answers to interrogatories, and that the height originally was three feet. We are also satisfied that it sufficiently appears that the height was raised twelve inches. It is a plain principle of law that an easement existing by prescription is measured by the right acquired by the use, and that it can not be

greater than the use. Phear Water Rights, 90; *Brookville, etc., Co.* v. *Butler,* 91 Ind. 134; *Postlethwaite* v. *Payne,* 8 Ind. 104.

The use in this case gave a right to maintain the dam at the height of three feet, and the appellants did wrong in increasing this height.

The appellee had a right to a decree abating the height of the dam, and as no objection was made to the form of the judgment in the trial court, none can be considered here. *Hardy* v. *Miller,* 89 Ind. 440; *Evans* v. *Feeny,* 81 Ind. 532; *Bayless* v. *Glenn,* 72 Ind. 5; *Baddeley* v. *Patterson,* 78 Ind. 157.

Judgment affirmed.

Filed Jan. 5, 1884. Petition for a rehearing overruled March 5, 1884.