## Roach *v.* Clark et al.

[No. 3,903. Filed January 28, 1902.]

Estoppel.—*Husband and Wife.*—*Mortgage.*—*Partition.*—Where a husband joined his wife in the execution of a mortgage for the purchase money of her real estate, and was present at a sale thereof by her administrator to discharge the debt, and heard the announcement made that all of the land would be sold, and stood by without objection and saw all of the land sold for a sum insufficient to satisfy the debt, ho will be estopped to claim a one-third interest in the land as against the purchaser who was ignorant of any claim or right of the husband in the land and was deceived by his conduct.

From Elkhart Circuit Court; *P. L. Turner,* Special Judge.

Action by Thomas W. Roach against John Clark and wife for partition. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*J. M. Van Fleet, V. W. Van Fleet, H. C. Dodge, A. S. Zook* and *W. H. Charnley,* for appellant.

*C. W. Miller, J. S. Drake, A. Deahl* and *B. F. Deahl,* for appellees.

Henley, J.—The appellant is the widower of one Huldah Roach, deceased. His deceased wife was in her lifetime the owner of the land in controversy, and died the owner of said land. She had purchased the land for $5,350, and had executed her notes for the entire purchase money, secured by a mortgage upon the land, in the execution of

Roach v. Clark.

which her husband joined.  At the time of her death no part of this debt had been paid.  The debt was of greater value than the land.  Her administrator brought an action to sell the real estate to pay the debts, particularly enumerating and describing the kind, amount, and character thereof, and making the widower and children parties defendant, as heirs.  Appellant was defaulted.  The land was ordered sold at public auction by the administrator, and was purchased by appellee John Clark for $5,000, which was less than what was due upon the purchase-money mortgage.  Appellant was in court when the land was ordered sold, and was present at the sale of the same.  He now claims, as the widower of Huldah Roach, to be the owner of the undivided one-third of the land in question.

This was an action to partition real estate.  Appellant, who began the action, alleged that he was the owner of the undivided one-third, and that the appellee, John Clark, was the owner of the undivided two-thirds of the real estate of which partition was sought.  Appellee, Anna Clark, is the wife of her co-appellee, John Clark.  Appellee, John Clark, answered in three paragraphs.  The first was a general denial; the second, that appellant's rights in the land was barred by the proceeding brought by the administrator of his deceased wife's estate to sell the land to pay debts, to which proceeding appellant was made a party defendant as his deceased wife's heir, and which proceeding resulted in the sale of all said real estate, and the conveyance of the same, pursuant thereto, to this appellee.  In this answer all the facts and all the proceedings which led up to the sale of the land by the administrator of Huldah Roach are set out with great particularity.

In appellee's third paragraph of answer all of the facts and proceedings as set forth in the second paragraph are again set forth at length, and the following additional averments are made:  That appellant knew all of the facts connected with the estate of his deceased wife; that, prior to the

filing of the administrator's petition to sell the land, the appellant, together with the other heirs, endeavored to procure a new loan upon all the lands of decedent for the purpose of paying off and discharging the purchase-money mortgage upon the land in controversy, but they were unable to secure such loan; that thereupon the administrator took steps to sell the land; that appellant had full knowledge of the terms of sale, and of the terms of the order of sale, and knew that the court had ordered the whole of said land to be sold to pay the purchase-money lien; that appellant attended the sale, and that the administrator, in the presence of appellant, stated that the whole of the said land would be sold, and that the administrator did thereupon, in appellant's presence and hearing, offer the whole of said land for sale for the payment and discharge of said lien; that appellant made no objection thereto, and made no claim whatever to any right, title, or interest in said land; that appellee, Clark, bought the land for $5,000, and paid for it; that said Clark relied upon the statements made by said administrator in appellant's presence and hearing, and to which appellant did not object, that he was offering and selling the whole of said land to discharge said lien; that the amount of the bid of the appellee, and for which bid the land was struck off to him, was not sufficient to pay the purchase-money mortgage; that appellee would not have bid the amount he did for two-thirds of said land, nor would he have bid two-thirds of said sum for two-thirds of said land; that appellant made no objection to the confirmation of the sale or to the execution of the deed; that, if appellant had made any objections, he would not have made the purchase; that he did not know that appellant claimed or had any interest in said land, but was led by appellant to believe, and did believe from the actions of said appellant, that appellant did not have or claim to have any interest whatever in said lands; that appellee did not know until long after he had purchased said lands at said administrator's sale that appel-

Roach v. Clark.

lant was the widower of the said Huldah Roach, deceased; that the claims filed against said estate, other than the purchase money secured by the mortgage aforesaid, are the doctors' bills and expenses of the last sickness of appellant's deceased wife, which said doctors were employed by the appellant, and also the funeral expenses of decedent, which claimants were employed by the appellant; that at the time of the death of decedent there were growing crops on the land more than sufficient to pay all the decedent's debts, other than the purchase-money mortgage, which crops appellant converted to his own use. The answer then concludes with the prayer that said appellant be, by reason of his conduct, estopped from claiming any right, title, or interest in and to any of said real estate. Appellant's demurrer to the second and third paragraphs of answer was overruled.

The court made a special finding of facts, and stated its conclusions of law thereon. In this special finding of facts every material allegation of both the second and third paragraphs of answer are found to be true. The court stated its conclusions of law as follows: (1) "That the plaintiff is not entitled to partition, and partition is denied; (2) that the defendant, John Clark, is the owner of said real estate described in the complaint, in fee simple; (3) that the plaintiff is estopped from asserting title to any of the real estate described in the complaint."

All of the material allegations of both paragraphs of appellee's answer having been found to be true, it follows that the court did not err in rendering judgment for appellee if either of said answers were sufficient, because it would affirmatively appear that a good defense had been fully established. Neither was there error in the conclusions of law. We will therefore confine this opinion to a decision of the questions arising upon the action of the trial court in overruling appellant's demurrer to the third paragraph of appellee's answer.

To constitute an equitable estoppel in this State, it is, as a matter of pleading, necessary to aver with great particularity and precision, leaving nothing to intendment, that the party relying on such estoppel acted upon the conduct of the party sought to be estopped, and on the faith of that conduct parted with some right or thing of value, and that the party sought to be estopped knew of his right in the subject-matter, and the party pleading such facts had no knowledge thereof. *Anderson* v. *Hubble*, 93 Ind. 570, 47 Am. Rep. 394; *Robbins* v. *Magee*, 76 Ind. 381; *Fletcher* v. *Holmes*, 25 Ind. 458; *Cole* v. *LaFontaine*, 84 Ind. 446.

In *Anderson* v. *Hubble, supra,* the Supreme Court say: "In the American notes to the Duchess of Kingston's case, 2 Smith Lead. Cas. (7 Am. ed.) 737, it is said: 'It has, in like manner, been long and well established in equity, and is now held in most courts of law, that every one who encourages, or stands by and sanctions the acquisition of land by another, will not only be estopped from invalidating the interest thus acquired, by the subsequent assertion of any title which he held with full knowledge at the time, but may be compelled to execute a conveyance to the purchaser.' In our own case of *Fletcher* v. *Holmes*, 25 Ind. 458, the rule is more broadly stated, but not more broadly than the authorities warrant. The language of the court in that case was this: 'A mere failure to give notice of a right, where another, without knowledge of the facts, is investing his money, and where it may be fairly concluded that he would not do so if informed of the facts, will generally preclude a subsequent setting up of the claim thus concealed.' The opinion in *Junction R. Co.* v. *Harpold*, 19 Ind. 347, quotes with approval the following: 'If a man, having title to an estate, which is offered for sale, stands by and encourages the sale, or does not forbid it, and thereby another person is induced to purchase the estate, under the supposition that the title is good, the former, *so standing by*, and being silent, shall be bound by the sale; and neither he, nor his

privies, shall be allowed to dispute the purchase.' 1 Story Eq., §185. It was said in *Gregg* v. *VonPhul*, 1 Wall. 274, 17 L. Ed. 536, that 'No one is permitted to keep silent when he should speak, and thereby mislead another to his injury. If one has a claim against an estate and does not disclose it, but stands by and suffers the estate to be sold and improved, with knowledge that the title has been mistaken, he will not be allowed afterwards to assert his claim against the purchaser.' There are many cases sustaining this general doctrine, among them: *Morgan* v. *Railroad Co.*, 96 U. S. 716, 24 L. Ed. 743; *Breeding* v. *Stamper*, 18 B. Mon. 175; *Hill* v. *Epley*, 31 Pa. St. 334; *Thompson* v. *Sanborn*, 11 N. H. 201, 35 Am. Dec. 490; *Wendell* v. *Van Rensselaer*, 1 Johns. 344; *Parkhurst* v. *VanCortland*, 14 Johns. 15, 7 Am. Dec. 427; *Buckingham* v. *Smith*, 10 Ohio 288; *Gregg* v. *Wells*, 10 Ad. & Ell. 90. In the case last cited it was said: 'A party who negligently or culpably stands by and allows another to contract on the faith and understanding of a fact which he can contradict, can not afterwards dispute that fact in an action against the person whom he has himself assisted in deceiving.' "

It is not necessary, in order to the existence of an equitable estoppel, that there should exist a design to deceive or defraud. The person against whom the estoppel is asserted must, by his silence or his representations, have created a belief of the existence of a state of facts which it would be unconscionable to deny; but it is not essential that he should have been guilty of positive fraud in his previous conduct. The cases on this subject were thoroughly reviewed in *Continental Nat. Bank* v. *National Bank*, 50 N. Y. 575, and it was affirmed that there need not be a purpose or intent to deceive or defraud. In *Blair* v. *Wait*, 69 N. Y. 113, it was said: "It is not necessary to an equitable estoppel that the party should design to mislead." A very strong opinion is that in *Stevens* v. *Dennett*, 51 N. H. 324, where it is said: "Thus, negligence becomes constructive fraud, although,

strictly speaking, the actual intention to mislead or deceive may be wanting, and the party may be innocent, if innocence and gross negligence may be deemed compatible". We have in our reports many cases illustrating this principle. Thus, if a maker of a non-commercial promissory note represents, to one about to buy it, that it is valid, and that there is no defense to it, and the purchase is made on the faith of this representation,. an estoppel arises against the maker. *Rose* v. *Teeple*, 16 Ind. 37, 79 Am. Dec. 403; *Rose* v. *Hurley*, 39 Ind. 77; *Vaughn* v. *Ferrall*, 57 Ind. 182. So, where land is improperly sold by a guardian or administrator, and the heirs accept the purchase money, they are estopped afterwards to question the purchaser's title. *Morris* v. *Stewart*, 14 Ind. 334; *Test* v. *Larsh*, 76 Ind. 452, *vide* p. 462. Again, if a mother approve a deed executed by her infant child, she is estopped to claim as heir, after the child's death, on the ground that the child was not of age. *Johnson* v. *Rockwell*, 12 Ind. 76; *Wiseman* v. *Macy*, 20 Ind. 239, 83 Am. Dec. 316. It would overturn all these cases and many more, to hold that there is no estoppel without design to defraud, because in none of them was such an element present. There must be such conduct on the part of the person against whom the estoppel is alleged as would make it fraud for him to gainsay what he had expressly admitted by his words, or tacitly confessed by his silence, but there need not be in the precedent acts actual fraud or evil design. All that it meant in the expression that "an estoppel must possess an element of fraud" is that the case must be one in which the circumstances and conduct would render it a fraud for the party to deny what it had previously induced or suffered another to believe and take action upon. As said in *Fletcher* v. *Holmes*, 25 Ind. 458: "The door is shut against asserting a right when that would result in doing an injury, by the party asserting it, to some other person, or when, 'in good conscience and honest dealing he ought not to be permitted to gainsay' his previous conduct." The

element of fraud appears when the effort is made to gainsay or deny the previous conduct. This is sufficient to work an estoppel and bring in the element of moral wrong, and there need be no precedent corrupt motive or evil design. If the effort to deny ought not in good conscience to be successful, then emerges the moral wrong, which the courts denominate "fraud."

The case of *Wire* v. *Wyman*, 93 Ind. 392, was an action for partition brought by the widow of a decedent (the administrator of whose estate had sold the whole of a tract of land to pay the debts of the decedent) against the purchaser of the land at the administrator's sale. The case was before the court upon the sufficiency of an answer, which the Supreme Court held good, and, in deciding the case, say: "If the facts alleged in this paragraph are true, and the demurrer admits their truth, the appellee is estopped from asserting any title to, or interest in, the real estate described in her complaint, as against the appellant or any one claiming under him. It is not shown that the appellee was under any disability, and, in the absence of such a showing, it must be assumed that she was not, at the time the facts occurred which are stated in the answer. We need not decide, whether the order of the court upon the administrator's petition, or the administrator's sale and conveyance of the real estate to the appellant, were or were not sufficient upon the facts stated to devest the appellee, as the decedent's widow, of her title to or her interest in such real estate. It is enough to say that no one, not under disability, can stand by during the sale of real estate and by *silence, speech or acts*, induce another person to become the purchaser of such real estate, and afterwards be permitted to claim, in a court of justice, as against such purchaser or those claiming under him, that he or she was at the time of such sale the owner of any share or interest, not then asserted, in the real estate sold."

This is strong language. It meets our hearty approval.

It is peculiarly applicable to the facts in the case at bar. The doctrine of estoppel *in pais* stands upon the broad grounds of equity, good conscience and good faith. Its purpose is to prevent injustice and guard against fraud. It accomplishes this by denying to a party the right to repudiate his admissions, however made, when by such admissions another has been induced to act. The character and strength of an estoppel is thus given to what might otherwise be mere evidence. Courts have universally held that he who is silent when conscience requires him to speak will not be permitted to speak when conscience requires him to keep silent. In the case under consideration the answer avers with particularity and precision all the facts necessary to constitute an equitable estoppel, and the special finding of facts finds every material averment of the answer to be true. The facts in this case appearing in the answers filed show this to be a most inequitable proceeding on the part of the appellant. The land in controversy was encumbered by a mortgage for purchase money which amounted to more than the land was worth. Appellant had joined in this mortgage. There was no part of the land which it did not require to pay this debt. There was no part of the land which appellant could hold against the enforcement of this lien. He stood by and saw all the land offered for sale to discharge this debt. It is announced in his presence that all the land will be sold. He is aware of all the rights he has in the premises. Appellee is ignorant of any claim or right of the appellant in the land and is deceived by his conduct. Appellant now asks that one-third of the land be set off to him, when it is admitted that it sold for its full value, and that the price paid was insufficient to satisfy a lien which covered every interest appellant could possibly have in the land. Indeed, in order to protect appellee from so unconscionable a claim, a court of equity might keep alive in his favor the lien of the purchase-money mortgage.

We find no error. Judgment affirmed.